# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF MINNESOTA.

LOUIS BLOOM and Others v. CHARLES J. LOFGREN and Others.[1]

January 28, 1896.

Nos. 9707—(311).[2]

**Partnership—Dealings between Members.**

In dealing with each other, partners occupy positions of trust, and are required to exercise the most scrupulous good faith towards each other. Nor is this requirement confined to persons who are actually copartners, but it extends to those negotiating for a partnership not yet formed.

**Findings Sustained.**

*Held*, that all of the findings of fact were supported by the evidence.

Action in the district court for Norman county for the dissolution of a partnership between plaintiffs and defendants, and for an accounting. The case was tried before Ives, J., who found as facts, among other things that the plaintiffs and defendants formed a partnership for the purpose of buying and owning a certain stallion; that defendant Lofgren was intrusted with the purchase; that he had previously bought the horse for $1,200, but that the partners with one exception were ignorant of the fact; that the partnership paid him $1,800 with which to pay for the horse, and that he then reported that he had bought the horse for the partnership for that sum and produced a receipt for $1,800, purporting to be from the pretended owner for the price.

[1] Reported in 65 N. W. 960.     [2] See note on p. iv., supra.

64 M.—1

The court found as conclusion of law that defendant Lofgren was indebted to the partnership in the sum of $600 and interest. From an order denying a motion for a new trial, defendant Lofgren appealed. Affirmed.

*O. J. Vaule* and *M. A. Brattland*, for appellant.
*Calkins & Sharpe*, for respondent.

COLLINS, J. From the evidence adduced upon the trial of this action, it was well established that the writing designated as "Exhibit A" never became a contract between defendant Lofgren and the other persons who signed it, for there was nothing tending to show that the former ever accepted its terms and conditions. To the contrary, it appeared that he did not, and that it was wholly superseded by the oral agreement entered into April 15, 1891, after the writing was signed. And even if it had been binding on the signers up to that time, it is clear that its terms and conditions were changed and modified at the meeting of Lofgren and his associates on that day. It was then agreed that Lofgren should purchase the horse in question of the supposed owner, Walker, for cash, for the association; that he should buy for $1,800 if he could not buy for a less sum; that he should advance the necessary money; and that he should take the notes of such persons as could not make immediate payment, payable at a future time, bearing 10 per cent. interest. This was the final contract, and, as before stated, it modified or entirely superseded the writing. If Lofgren had previously purchased the horse at $1,200,—and it was admitted that he had,—he fraudulently imposed upon those with whom he was dealing, his actual or proposed copartners in the transaction. The law will not permit him to retain and enjoy the fruits of his fraudulent representations that Walker was still the owner, that the lowest cash price was $1,800, and his later representations of the same nature, that he had bought the animal as authorized, and had paid $1,800 for him. In their dealings with each other, partners occupy positions of trust, and are required to exercise the most scrupulous good faith towards each other. Nor is this requirement confined to persons who are actually copartners, but it extends to those negotiating for a partnership not yet formed. All of the findings of fact were supported by the evidence.

Order affirmed.