## MOLLIE ROSENBERG AND ANOTHER v. ANDREW E. NELSON AND OTHERS.[1]

### May 7, 1920.

### No. 21,759.

**Charge to jury to accord with theory of the case.**

1. The court may properly confine the charge so as to accord with the theory upon which a party predicates his case in the pleadings and upon the trial, and need not give instructions not pertinent to the case as pleaded and proved, even though the same be correct as abstract propositions of law.

**Grant of new trial erroneous.**

2. Upon the evidence in this case there could be no recovery against either appellant, hence the court should not have granted a new trial for any error in the charge.

**New trial.**

3. The record does not disclose any error in the rulings during the trial which would warrant granting a new trial.

Action in the district court for Hennepin county to recover $115,000. The facts are stated in the opinion. The case was tried before Jelley, J., who when plaintiffs rested granted a motion to dismiss as to Elliott and Sherman Film Corporation, and at the close of the testimony denied a motion to dismiss as to defendant John Elliott and a motion to direct a verdict in his favor, and a motion to direct a verdict in favor of defendant Nelson, and a jury which returned a verdict in favor of defendants. From an order setting aside the verdict and granting plaintiffs a new trial, defendants appealed. Reversed.

*John Lind, Edward Nelson* and *A. T. Larson,* for appellants.
*H. E. Fryberger* and *C. B. Elliott,* for respondents.

QUINN, J.

Action for damages alleged to have been caused by the conversion of an undivided one-third of the assets of the Elliott-Sherman Film Com-

[1]Reported in 177 N. W. 659.

pany, pursuant to a conspiracy entered into by the defendants in August, 1915. There was a verdict in favor of the defendants. Upon motion, the trial court set the verdict aside and granted a new trial solely upon the ground of errors in its charge to the jury. From such order the defendants appeal.

In April, 1915, John Elliott and Harry A. Sherman entered into a written agreement to engage in the moving picture business as partners, under the firm name and style of Elliott & Sherman Film Company. The plaintiff Mollie Rosenberg was engaged, with her son, in the moving picture business at Minneapolis. Jacob Rosenberg, her husband, was in the mercantile business and owned no interest in the picture business. Andrew E. Nelson was cashier of the Union State Bank of Minneapolis with which all of the parties to this action did their banking.

The copartnership was short of money; its account was overdrawn at the bank in excess of $2,000; Elliott & Sherman inquired of Nelson whether the bank would accept their notes for $3,000, if indorsed by Jacob Rosenberg, and were informed that it would.

On June 15, Elliott, Sherman and Mollie Rosenberg entered into an agreement to organize, within 15 days, a corporation under the laws of the state of Minnesota, with an authorized capital of $30,000, for the purpose of conducting and carrying on the picture business at Minneapolis, under the name of Elliott-Sherman Film Company, all of the stock of such corporation to be divided equally between Elliott, Sherman and Mrs. Rosenberg. This agreement was put in evidence as plaintiffs' Exhibit F. Elliott, Sherman and Jacob Rosenberg went to the Union State Bank the following morning, where Elliott and Sherman made three notes each for the sum of $1,000, payable to the bank, and Jacob Rosenberg indorsed the same. The bank received the notes, giving credit therefor to the copartnership, which wiped out the overdraft and left a balance of about $600 subject to check. Rosenberg knew at the time what the proceeds of the notes were to be used for. The agreement, Exhibit F, was never carried out, nor does it appear that any of the parties thereto ever requested that it should be.

In the meantime Elliott and Sherman were negotiating for an interest in the right to exhibit the film "The Birth of a Nation" in the state

of Wisconsin. They succeeded in effecting an agreement with the owner of the film, the Epoch Producing Company, under which the Wisconsin Film Corporation was organized for the purpose of handling the film in that state. They required $5,500 in ready money to carry out the agreement with the Epoch Producing Company. They had no money and applied to Nelson for a loan, offering to give him their note and to assign the stock which they were to procure in the Wisconsin corporation as collateral, and to give him one-third of the profits received from the Wisconsin corporation, after payment of the note. Nelson advanced the money, received the copartnership note and later an assignment of 198 shares of stock as collateral.

The organization of the Wisconsin corporation was completed July 16, 1915, under the laws of that state. It had an authorized capital of $10,000, divided into 400 shares of which 198 were issued to R. E. Aitken (president of the Epoch Producing Company) and 198 to Harry A. Sherman. The latter shares were assigned to Nelson as stated.

In order to procure the right to exhibit the film in Wisconsin, the Wisconsin corporation was required to enter into an agreement with the Epoch Producing Company to pay it $11,000 upon the execution of the contract and $1,000 upon delivery of the second print of the photoplay, and 35 per cent of the gross receipts derived from the picture, after such receipts equaled the sum of $15,000. The Wisconsin corporation's net earnings up to September 1, 1915, amounted to about $20,000. The receipts coming to Elliott and Sherman were placed to the credit of the copartnership in the Union State Bank, and checked out in payment of the several notes referred to.

The picture was popular in Wisconsin from the start and the venture promised to be a success. In the latter part of August plaintiff began to assert an interest in the proceeds therefrom and employed a law firm to enforce her demands. On September 1, 1915, after considerable parleying, a settlement was reached which was reduced to writing and signed by the parties. Upon the trial the same was offered in evidence as plaintiff's Exhibit G, of which the following is a copy:

"MEMORANDUM OF AGREEMENT Made and entered into this 1st day of September, 1915, between Mollie Rosenberg, Jacob Rosen-

berg, Jack Elliott and Harry Sherman, all of Minneapolis, Minnesota.

"WITNESSETH, That whereas, said Mollie Rosenberg and the said Jack Elliott and Harry A. Sherman, did heretofore enter into an agreement under date of June 14, 1915, to incorporate the Elliott-Sherman Film Company, and

"Whereas, the said Jacob Rosenberg did indorse three (3) notes of $1,000 each, made by the said Jack Elliott and Harry Sherman and that two (2) of said notes have been paid, and

"Whereas, it is the intention and agreement of the parties to terminate any and all agreements existing between the parties.

"NOW, THEREFORE, in consideration of the sum of One Thousand Dollars ($1,000.00) as evidenced by two promissory notes signed by Jack Elliott and Harry Sherman, payable as follows: $500.00 sixty days from date and $500.00 ninety days from date, it is agreed:

"(1) That said Mollie Rosenberg is hereby released from any and all claims under and by virtue of said agreement to incorporate the Elliott-Sherman Film Company under date of June 14, 1915, which said agreement is hereby terminated and the rights and the obligations of the parties thereto hereby released.

"(2) And the said Mollie Rosenberg and Jacob Rosenberg hereby release and surrender any and all claims that they may have or claim to have in the said Elliott-Sherman Film Company as the same is now being run or operated in the city of Minneapolis, Minnesota, and surrender and release any and all claims or rights that they may have to any lease rights or options that the said Elliott-Sherman Film Company or that Harry Sherman or Jack Elliott, either as copartners or individually, may have in any film or film productions either in the state of Minnesota, or elsewhere.

"(3) Said Harry Sherman and Jack Elliott hereby agree that they will pay off and hold the said Jacob Rosenberg harmless from any and all liability by reason of his indorsement of said note of One thousand dollars ($1,000.00), due on or about the 14th day of September, 1915, and now held by the Union State Bank of Minneapolis, Minnesota, and will save harmless the said Mollie Rosenberg and pay off and assume

any and all of the obligations and indebtedness heretofore incurred or contracted by the said Elliott-Sherman Film Company.

"Dated at Minneapolis, Minn. September 1, 1915.

"Witnesses:

"Albert H. Hall.

"Mollie Rosenberg
"Jacob Rosenberg
"Jack Elliott
"Harry A. Sherman."

An indorsement was made at the time upon the agreement, Exhibit F, surrendering and canceling the same, and the notes mentioned in Exhibit G were paid according to their tenor.

In November, 1918, the plaintiffs served a notice upon the defendants, claiming an undivided one-sixth of the capital stock of the Wisconsin corporation and an undivided one-third of all the assets of the partnership and in the right to purchase the right to exhibit the film in the state of Minnesota and 16 other states west of the Mississippi river, and demanding the cancelation of the release of Exhibit F, and the return of all her interest in the assets of the copartnership.

The defendants are charged, in the complaint, with a conspiracy for the purpose of depriving the plaintiffs and each of them of all their interest in and to the assets of the copartnership referred to. It is averred that the plaintiff Mollie Rosenberg was a member of the copartnership and owned an undivided one-third of its assets, and that, for the purpose of carrying out the conspiracy and in furtherance thereof, the defendants Sherman and Nelson stated and represented to the plaintiffs that "The Birth of a Nation" had been a disappointment and not a paying proposition in the state of Wisconsin. That Sherman stated to plaintiffs that it would be advisable for them to dispose of their interest in such picture film as quickly as possible because the proposition had proved a dead loss in Wisconsin. That Sherman informed plaintiffs that he believed he could dispose of their interest to Nelson. That Nelson stated and represented to plaintiffs that unless plaintiff Mollie Rosenberg was willing to assign to him all her interest in the picture film he would be compelled to demand immediate payment of $8,000 which her

husband owed to the bank. That Jacob Rosenberg was at the time financially embarrassed and unable to make payment of his indebtedness. That all of said statements and representations made by Sherman were made on behalf of all of said defendants and were especially authorized and instigated by the defendant Nelson. That on September 1, 1915, and just prior thereto the defendant Nelson stated to plaintiffs that the said picture film was in fact worthless and had proved a failure in the state of Wisconsin. That in reliance upon the statements and representations of the defendants so made, and being misled and deceived thereby, the plaintiffs consented to sell and on September 1, 1915, did sell, assign and dispose of all their right, title and interest in said partnership and its assets to the defendants Elliott and Sherman, for the consideration of $4,000. It is then averred that said statements and representations were false and fraudulent and made for the purpose of inducing the plaintiff Mollie Rosenberg to assign and release her interest in said partnership and picture for the benefit of the defendant Nelson. That subsequent thereto the defendants received, as and for the proceeds from plaintiff's one-third interest in said partnership, an amount in excess of $100,000, to her damage, etc.

The defendants answered to the merits, denying the conspiracy and the making of the statements and representations charged in the complaint, and denying that the plaintiffs or either of them were ever members of the firm or the copartnership or ever owned any interest in or to its assets.

It is contended on the part of appellants that Mrs. Rosenberg was never a member of the copartnership and never owned any interest in or to any of the assets thereof; that the contract, Exhibit F, was a mere agreement to form a Minnesota corporation for the purpose of conducting business at Minneapolis, and that there is a total lack of proof in support of the contention that Mrs. Rosenberg ever owned any interest in the assets of such copartnership, and therefore no other verdict than one in favor of the defendants could be had or sustained under the pleadings and proofs, and therefore it was error to set aside the verdict and grant a new trial, even though the instruction complained of was incorrect. The instruction upon which the court granted a new trial was as follows:

"The defendants, gentlemen, are charged by the plaintiffs with having entered into a conspiracy to and did obtain from her valuable property at an insignificant price, by false and fraudulent representations. Gentlemen, a conspiracy is a combination formed by two or more persons to effect an unlawful end, said persons acting under a common purpose to accomplish the end desired. Bearing this definition in mind, gentlemen, it is for you to determine from the evidence whether the claim of Mrs. Rosenberg is true, that is, that the defendants did enter into a conspiracy to and did defraud her as charged. If you are not convinced by a fair preponderance of the evidence that that charge has been substantiated you should so find, and then return a verdict for the defendants."

And before the jury retired plaintiffs' counsel called the court's attention to the well settled legal proposition that, if actual fraud is proved against but one of the alleged coconspirators, a verdict should be had against him. Shoemaker v. Jackson, 128 Iowa, 488, 104 N. W. 503, 1 L.R.A.(N.S.) 137, 5 R. C. L. p. 1093, § 43.

The instructions should conform to the pleadings and the evidence given in support of the issues. But it is the duty of the trial court to refrain from giving an abstract instruction, where there is no basis for it in the evidence. Such an instruction is not helpful to the jury, nor proper, where the evidence leaves no room for its application. Western Stone Co. v. Muscial, 196 Ill. 382, 63 N. E. 664, 89 Am. St. 325; State v. Douglas, 26 Nev. 196, 65 Pac. 802, 99 Am. St. 688; Tarr v. Oregon Short Line R. Co. 14 Idaho, 192, 93 Pac. 957, 125 Am. St. 151; R. C. L. 782, 786, §§ 49, 51, and cases cited. We think the evidence justified the instruction given, and rendered the one suggested by counsel inappropriate. Harry A. Sherman is a party to the suit, but was evidently not served. He has not answered. His wife, a niece of the plaintiffs, is their chief witness. She testified that she, her husband, Elliott and Nelson were all together and united in the scheme to get plaintiffs out of the enterprise, she being requested to make any representation she saw fit to prevail on her aunt and uncle to release their rights under the alleged partnership agreement. The complaint plainly charges the three defendants named with conspiracy to deceive and defraud plaintiffs of their property, and counsel for plaintiffs all through the

trial vehemently insisted that the evidence adduced was to prove the conspiracy alleged. If there was fraud practiced, it was for a common purpose and participated in by each of the three defendants, at least by the two defendants affected by the verdict, Nelson and Elliott. No distinction can be made between them from plaintiffs' standpoint. If one was guilty of actionable fraud so was the other, and it was a fraud in which there was concerted action. And these defendants' testimony also makes it equally clear that both sought peace from plaintiffs' asserted claims and acted in unison, though of course each denies that any deceit was employed. On no theory of the case was the jury warranted in freeing one of the defendants mentioned and holding the other.

But we further conclude from a careful consideration of the record that defendants were entitled to a verdict as a matter of law. Plaintiffs introduced the release, Exhibit G. It is clear that by that instrument they parted with every interest which they or either of them might have had in the partnership of Elliott-Sherman Film Company and in any rights growing out of any interest in the Wisconsin corporation or in the proceeds from exhibiting the film mentioned anywhere. No question can well be made that if this instrument may not be set aside or rescinded for fraud, it is conclusive against a recovery as against each defendant. It was prepared by plaintiffs' own lawyers, after numerous consultations with defendants, some of which were in the presence of plaintiffs.

One of the astute lawyers plaintiffs then had, admitted on the witness stand that the only foundation for the claim Mrs. Rosenberg made to any interest in the Wisconsin corporation was the agreement, Exhibit F, to form a corporation to operate a picture show in Minneapolis. He testified that defendant Nelson permitted him to examine the account in the Union Bank of the daily receipts the Elliott-Sherman Film Company got from the exhibition of the Birth of a Nation by the Wisconsin corporation, and that Nelson gave him what, the attorney still believes, was full and accurate information of the earnings of the photoplay in Wisconsin. At that time it is not disputed that the earnings coming to the Elliott-Sherman partnership had not been sufficient to pay in full the notes indorsed by Rosenberg or the note to Nelson. There is a faint denial by plaintiffs that their attorney communicated to them the

information he obtained. Whether or not he so did would not seem very important. They were chargeable with the knowledge their legal adviser obtained during the investigation of their claim, and there is no evidence that may be tortured into a suspicion that plaintiffs' said attorney failed to secure and protect the best interests of his clients to the fullest. On the contrary, the conclusion is almost irresistible that what he did procure was an exaction from Elliott and Sherman, because Nelson refused to undertake to finance the procuring of the right to exhibit the film in certain western states, unless they settled with the Rosenbergs. To avoid a formal written settlement and release, prepared by a party's own lawyer after full and adequate investigation, the proof of fraud or deceit inducing its signing should be clear and convincing. McCall v. Bushnell, 41 Minn. 37, 42 N. W. 545; Minneapolis, St. P. & S. S. M. Ry. Co. v. Chisholm, 55 Minn. 374, 57 N. W. 63; Dart v. Minnesota Loan & Trust Co. 74 Minn. 426, 77 N. W. 288; Jumiska v. Andrews, 87 Minn. 515, 92 N. W. 470.

But it is argued that a fiduciary or confidential relation existed between plaintiffs and defendants because of the alleged partnership or joint interest in the venture of acquiring the right to exhibit the Birth of a Nation; and, therefore, the burden of proof was upon defendants to show that there was no fraud or deceit practiced in procuring Exhibit G. The evidence does not warrant the invoking of the doctrine of fiduciary relation. As above stated, when plaintiffs first asserted any of the rights involved in this action, their own lawyers found no basis for the claim of partnership or joint interest in the Wisconsin corporation or in the right to acquire and exhibit the film other than was derived from Exhibit F. It is clear that that instrument does not confer any such interest or right. And the disconnected utterances which plaintiffs' witnesses testify to as indicating admissions by Elliott and Sherman are far from establishing any legal agreement for a partnership or any joint undertaking. According to plaintiffs' own admissions they never contributed one penny towards acquiring any rights, and did not in any manner aid Elliott or Sherman in a business way except by Mr. Rosenberg's indorsement of their notes mentioned. Plaintiffs never counseled or planned with any of the defendants how to obtain the right to exhibit any film in Wisconsin or elsewhere. They knew of the ex-

hibition in Wisconsin from early in July and never inquired about its success or earnings until this claim was made in the latter part of August, yet Mr. Rosenberg was desperately pressed by creditors. The evidence is altogether too flimsy to establish that at the time when the alleged fraud was practiced plaintiffs were in a position to invoke for their protection the rule of fiduciary or confidential relationship to defendants. They were then asserting a claim which the defendants denied, and pressing it with the aid of able lawyers who took nothing for granted, but made full investigation. The parties were then dealing at arms' length, and if either side can be heard to say that they were under a disadvantage it was defendants, for they apparently had not the aid of an attorney. We think the burden of proof was on plaintiffs to prove the fraud, as the jury were instructed, and to which instruction no complaint was made either at the trial or in the motion for a new trial. The cases cited by respondents are not in point. Bloom v. Lofgren, 64 Minn. 1, 65 N. W. 960, was where one admittedly a partner bought a horse for the partnership, paying $1,200 therefor, and then representing to the partnership that he had paid $1,800, pocketed the difference. Of course, he was held to account. Tancre v. Reynolds, 35 Minn. 476, 39 N. W. 171, is really in favor of defendants' position herein. Shevlin v. Shevlin, 96 Minn. 498, 105 N. W. 257, did not involve a contract made after a dispute had arisen, nor did the plaintiff therein have the aid of a lawyer either in advising him or in drawing the contract as in the case at bar.

Our conclusion being that upon the evidence that was received no verdict against either appellant could be permitted, it necessarily follows that no error in the charge prejudiced plaintiffs. It only remains to determine whether any material evidence that possibly could have changed such conclusion was erroneously excluded or stricken from the record. We think there was no such error made. The evidence of the transactions, occurring after Exhibit G was executed, whereby a syndicate formed by defendant Nelson procured the right from the Epoch Producing Company to exhibit the "Birth of a Nation" in certain western states was properly excluded. Plaintiffs' testimony does not intimate that misrepresentations as to negotiation therefor were made before Exhibit G was signed. It is suggested that Exhibit 15, introduced by

defendants, is not in the record, hence they should not be heard to make the claim that the evidence requires a verdict for defendants. The record clearly discloses that Exhibit 15 is the contract between the members of the syndicate referred to and can contain nothing of importance on the issue of fraud in procuring Exhibit G.

The order granting a new trial is reversed and the case is remanded with direction to enter judgment on the verdict.

Reversed with direction.