NIKOLAS KIEFFER v. FRED E. SHERWOOD AND ANOTHER.[1]

October 2, 1931.

No. 28,592.

[1]Reported in 238 N. W. 331.

206

*Merriam & Wright* and *Weikert, Lohmann & Felhaber,* for appellants.

*Walsh, Jackson, Walsh & Yackel,* for respondent.

HOLT, J.

The appeal is from the order denying defendants' motion in the alternative for judgment notwithstanding the verdict or a new trial.

On the evening of December 29, 1929, plaintiff and his wife, the decedent, seated in the back seat of their Ford sedan, were being driven by their 18-year old son south on Earl street in St. Paul approaching Sixth street, when the defendant Allen, with the consent of his stepfather, was driving the latter's Chevrolet sedan east on Sixth street approaching Earl street. Sixth street is on a rather steep down grade as it comes into Earl street. Earl street is a through street and vehicles intending to cross it are required to come to a stop before entering the intersection. Defendant Allen did not stop but saw the Ford sedan before he came to Earl street.

His excuse for not stopping is that his car slid when he applied the brakes. The Chevrolet struck the Ford at the right front door and shoved it to the southeasterly curb of Earl street. The evidence would warrant the jury in finding that plaintiff's car traveled at a speed less than 20 miles an hour and defendants' at a speed of 25 to 35 miles per hour when approaching the intersection and that plaintiff's car entered it first.

Whether Allen operated his car negligently was clearly a jury question. He violated the law in not stopping and in not giving the right of way to plaintiff's car, which the jury could well find had such right of way. Whether the claimed sliding on the slippery street excused his violation of the law was for the jury to determine. Going down a steep grade at the foot of which to his knowledge he was required to stop before entering the through street required a speed and care commensurate with the danger to be apprehended from the slippery condition of the streets. It is also plain that at the speed plaintiff's car was being driven on a through street it cannot be held as a matter of law that either the driver thereof or any one of its occupants was guilty of contributory negligence. So that the court did not err in denying judgment notwithstanding the verdict, unless plaintiff failed to prove that the collision was the proximate cause of her death.

Defendants insist that plaintiff did not adequately prove that the injury Mrs. Kieffer sustained in the collision on December 29 caused her death January 8 following; therefore they should have judgment notwithstanding the verdict. We think the evidence furnished the jury sufficient basis for finding that the injury inflicted by the collision was the primary cause of her death. For her age, 60 years, she was a comparatively healthy and active housewife up to the time of the collision. That this was a severe jolt is believable from the speed of the cars, the shoving of the Ford car across the street with such force that decedent was knocked out of her seat, receiving a large black and blue mark on her buttock, an abrasion or mark on her arm, and a bump on her head. Within a few hours she complained of illness and within five days was under

the care of her doctor. On the eighth day after the injury her condition became so acute that an operation was deemed imperative. It was performed, and it was ascertained that a large gallstone imbedded in a fistula had broken through and lodged in the small intestine, causing bowel obstruction; and a post-mortem autopsy disclosed a smaller gallstone impacted so as to obstruct the gall ducts, producing jaundice and contributing to or directly causing the fatal result. The doctor who had charge of Mrs. Kieffer from the first, who assisted at the operation, and who performed the autopsy gave his opinion that the jolt to the body received in the collision ruptured the fistula and moved the gallstones, creating the condition which ultimately necessitated the operation and produced death. Of the same opinion also was the surgeon who performed the operation.

Defendants' medical expert gave the opinion that the collision and the injury Mrs. Kieffer received therein did in no manner cause or contribute to her death, that the obstruction of the bowel was more likely paralysis of some part thereof attributable to other causes than the jarring suffered in the collision.

This is sufficient to show that there were opinions of competent medical experts supporting the jury's finding of proximate cause. In the nature of the case there could not be a physical demonstration of cause and effect. The jury had need of the opinion of medical experts as to whether the shock of the collision set up conditions which resulted fatally. The jury is not to be found fault with because greater reliance was placed upon the opinion of the medical expert who treated Mrs. Kieffer after the collision, who had observed her symptoms, who assisted in the operation, and who conducted the autopsy, and of the surgeon who performed the operation, than upon the opinion expressed by defendants' medical expert, who had only the testimony given in court for his basis. The former had all the information that a visible examination of the internal organs could give a doctor. Painstakingly the attorneys on both sides drew from the experts the reasons for their opinions. Indeed, they were subjected to a severe medical examination with

regard to every ailment of which there was the slightest suggestion in the history and bodily condition of Mrs. Kieffer in order to affect the value of their expressed opinion as to the cause of death. It is true that it was for the jury to determine whether or not the collision caused death (Briggs v. Minneapolis St. Ry. Co. 52 Minn. 36, 53 N. W. 1019). But the death not being immediate from direct visible wounds inflicted by defendants' car so that the jury as laymen could trace death to the collision, there was need of the opinion of medical experts concerning the cause of the condition found in Mrs. Kieffer's body which admittedly produced death. The jury could well find upon the medical testimony and the other evidence that the collision was the primary cause of death. Defendants were not entitled to judgment notwithstanding on the ground that there was lack of proof of proximate cause.

Defendants ask a new trial on errors assigned on the rulings of the court admitting the opinion of Dr. Sterner and Dr. Voges to hypothetical questions concerning the cause of death. As to Dr. Sterner, it appears he had heard the testimony, he had performed the operation, and testified as to the symptoms of the patient until death occurred. The question covers nearly three pages; additions consumed nearly two pages more. Although objection was made that no foundation was laid, that things not in evidence were assumed and things in evidence were not included, counsel failed to suggest anything either improperly included or improperly omitted. In view of what has been already stated as to the opportunity of Dr. Sterner to qualify as an expert, there is no merit in the objection. The same is equally true in respect to Dr. Voges; and in addition he was permitted to give his opinion without objection that the collision was the primary cause of death (folios 450 and 451 of the record). After that was done he was cross-examined and re-examined for considerable time until the doctor was asked:

"Have you an opinion as to whether or not that stone would have remained in the fistula for some time in the future if the accident had not occurred?"

Answering in the affirmative, he was requested to give his opinion, and the objection was made and a motion to strike out the doctor's "testimony relative to his answer to the hypothetical question." The motion was granted. Apparently the only ground for the motion was that the doctor admitted that, although in court, he had not heard Mr. Kieffer and his son testify that Mrs. Kieffer had not vomited at home. It is hard to believe that the court intended to strike the testimony given without objection, as above indicated, when the witness had personally seen Mrs. Kieffer vomit and had so testified.

But however that may be, plaintiff's counsel shortly framed a new hypothetical question, covering nearly five pages of the record, upon which Dr. Voges was asked for his opinion as to the primary cause of death. Defendants' counsel again objected on the same ground, but did not suggest what was incorrectly included or omitted from the question. The witness answered: "The automobile accident." When the court expressed doubt of that being a proper form of answer, the attorney for defendant remarked: "I do not care to interpose an objection. I am not going to admit it is a proper answer. I am just not going to object." It is perfectly plain that no error crept in in the examination of plaintiff's two medical experts which should result in a new trial.

Other errors assigned to rulings on evidence, as for instance excluding defendant Sherwood's telephone talk with an unidentified person, and the conclusions of witnesses Johnson and Hughes as to whether Mrs. Kieffer appeared injured, are so obviously without merit as to require no comment. Nor can prejudice have resulted to defendants because of this instruction: "One who loses his or her life in an accident is presumed to have exercised due care," etc. It is not claimed that the instruction was legally inaccurate but that it was inapplicable. Even so there could be no prejudice claimed, for the court charged that the negligence, if any, of Mrs. Kieffer's son, the driver of the car, was imputable to her, and outside of his driving there was no evidence indicating that the deceased was guilty of any negligence whatever.

The verdict was for $3,000. Nearly a third thereof is accounted for by special damages such as medical and hospital bills and funeral expenses. The balance cannot be held excessive compensation to the surviving spouse and minor son for the loss of a wife and mother whose life expectancy exceeded ten years. We find no error upon which to reverse. The case was carefully tried and submitted to the jury in a clear and concise charge, and the verdict as to amount was approved by the learned trial court.

The order is affirmed.