RUBY AND GERALD A. DeVERE v. GUSTAVE A. PARTEN AND OTHERS.[1]

June 28, 1946.

No. 34,119.

*Matthew J. Levitt* and *Ernest A. Rich,* for appellants.
*Geoffrey P. Mahoney* and *Bergmann Richards,* for respondents.

PETERSON, JUSTICE.

The purpose of this appeal is to review an order denying plaintiffs' motion for a new trial after verdicts for defendants in two separate actions which were tried together. In one action, Ruby

[1]Reported in 23 N. W. (2d) 584.

DeVere sued to recover for personal injuries alleged to have been sustained as the result of defendants' failure to provide her a safe place to work in violation of statutory duty. In the other action, Gerald A. DeVere, asserting liability on the same grounds, sued to recover for consequential damages sustained by him as her husband as a result of her injuries. For convenience, we shall discuss the appeal as if it involved only the case in which Ruby DeVere is plaintiff, because anything said with respect to her case is equally applicable to her husband's.

Plaintiff is suffering from a disease known as transverse myelitis. As a result of the disease, she is completely and permanently paralyzed from about two inches above her umbilicus to the soles of her feet and has lost all control of her bowel and bladder movements. Her condition is such that she requires care and nursing.

Plaintiff claims that the transverse myelitis was caused by her inhaling vaporized carbon tetrachloride in defendants' machine shop, where as the employe of the Kimberly-Clark Corporation she was present as defendants' invitee to supervise the inspection of certain war work being done by defendants as subcontractors of Kimberly-Clark. While she was an employe of Kimberly-Clark and not of defendants, she charges defendants with failure of the duty imposed by Minn. St. 1941, § 182.32 (Mason St. 1927, § 4174), upon "the employer" to provide proper and sufficient ventilation to remove the vapors.

Defendants deny that the transverse myelitis from which plaintiff is suffering was caused by her inhaling vapors of carbon tetrachloride in their shop, and set up as affirmative defenses that (1) she was their employe and, as such, her sole remedy against them was under the workmen's compensation act to recover benefits either for accidental injury or for occupational disease (§ 176.04 [Mason St. 1940 Supp. § 4272-3]); and (2), if she was in fact the employe of Kimberly-Clark, her remedies were limited to the provisions of the workmen's compensation act because of the fact that both Kimberly-Clark and defendants were subject to the act, insured for workmen's compensation liability, and engaged in

furtherance of a common enterprise or the accomplishment of the same or related purposes in operation on the premises where the injury was received at the time thereof, and not otherwise. § 176.06 (1940 Supp. § 4275-5); Tevoght v. Polson, 205 Minn. 252, 285 N. W. 893.

The case apparently was tried upon the theory that, if plaintiff was Kimberly-Clark's employe and her action was not barred by the provisions of the workmen's compensation act upon the grounds mentioned, defendants would not be liable to her as "the employer[s]" under the statute making it the duty of an employer to provide ventilation, but would be liable, if at all, for negligently making their premises unsafe for plaintiff as their invitee by failing to exercise reasonable care to protect her from the carbon tetrachloride vapors resulting from the operations there carried on.

Here, plaintiff contends that (1) defendants' counsel in his closing argument to the jury was guilty of prejudicial misconduct because of the fact that he stated erroneously as a matter of law that, if the jury returned verdicts for defendants, plaintiff would still have the right to recover compensation benefits against either Kimberly-Clark or defendants (see, Ott v. St. Paul Union Stockyards, 178 Minn. 313, 227 N. W. 47); (2) the trial judge erred in failing to charge the jury that defendants had the burden of proving that the workmen's compensation act was applicable to bar plaintiff's claim either on the ground that her injury was the result of an accident or of an occupational disease; and (3) the trial judge erred in failing to charge that bringing and maintaining the instant action constituted, under the rule of the Ott case, an election on plaintiff's part so as to bar her from proceeding further against Kimberly-Clark or defendants for compensation benefits under the workmen's compensation act. The good faith of counsel in making the remarks complained of is not challenged. Defendants contend that (1), even if their counsel was guilty of the alleged misconduct in his summation and defendants had the burden of proof with respect to the applicability of the workmen's compensation act as a bar to plaintiff's right to bring and maintain

this action, the errors complained of were harmless, because the verdicts were right as a matter of law, for the reason that plaintiff failed to prove that her injuries were caused by inhaling carbon tetrachloride vapors in their shop; and (2) in no event was plaintiff entitled to a charge as to what her right to recover workmen's compensation might be if the verdict was against her.

Plaintiff argues that the remarks of defendants' counsel in his closing argument, to the effect that plaintiff would have a right to recover workmen's compensation benefits, even if the verdict was for defendants, are erroneous as a matter of law; but has cited no authority holding that a mere misstatement of law made in good faith by counsel in his closing argument constitutes misconduct. We shall not inquire whether such is the rule, for the reason urged by defendants that errors occurring upon the trial are harmless where the verdicts are right as a matter of law.

New trials are granted in the interests of justice in order that a litigant may have his case determined free from errors of law and irregularities prejudicially affecting the decision. Errors in the charge and misconduct of the prevailing party or his counsel are recognized as grounds for granting a new trial. Unless the error or irregularity complained of has resulted in prejudice to the complaining party, there is no injustice to be corrected, and the interests of justice do not require that a new trial be granted. Where the complaining party has no cause of action, the law compels a finding against him regardless of any finding by the trier of fact. In that situation, nothing said by his adversary in the course of the trial or any error occurring upon the trial can have any possible effect upon the result which the law compels. Where the verdict is the only one warranted under the law and by the evidence, error in the charge and misconduct on the part of counsel for the prevailing party in his closing argument are harmless and no grounds for a new trial. Wilson v. Davidson, 219 Minn. 42, 17 N. W. (2d) 31 (error in charge); Moore v. Phoenix Ins. Co. 100 Minn. 393, 111 N. W. 263 (errors in charge and misconduct of jury); Melberg v. Wild Rice Lbr. Co. 127 Minn. 524, 149

N. W. 1069 (error in charge where plaintiff failed to establish a cause of action); Renn v. Wendt, 185 Minn. 461, 241 N. W. 581 (improper remarks of counsel for prevailing party in his closing argument). The doctrine of harmless error should be limited in its application to cases where the defeated party would not be entitled to recover in any view of the evidence. The doctrine is not to be invoked as a cure-all to sustain verdicts that otherwise seem just. Independent School Dist. v. A. Hedenberg & Co. Inc. 214 Minn. 82, 7 N. W. (2d) 511.

In the instant case, if the evidence reasonably would have sustained a finding in favor of plaintiff that she became afflicted with transverse myelitis as a result of defendants' negligence in exposing her to vapors of carbon tetrachloride while she was in their plant, the issue plainly would have been one for the jury (Clark v. Banner Grain Co. 195 Minn. 44, 261 N. W. 596; see, Symons v. G. N. Ry. Co. 208 Minn. 240, 293 N. W. 303), and she would have been entitled to have that issue determined free from error of the trial judge and misconduct on the part of counsel for defendants. For purposes of decision, we shall assume, without so deciding, that the failure to charge that defendants had the burden of proof in the respect mentioned constituted error and that the statements of defendants' counsel in his closing argument constituted misconduct. In the final analysis, whether the error and misconduct were in fact prejudicial depends upon whether the evidence was sufficient to sustain a finding that plaintiff became afflicted with transverse myelitis as a result of being exposed through defendants' negligence to vapors of carbon tetrachloride while she was an invitee in their machine shop.

We think that the evidence here is conclusive as a matter of law that the transverse myelitis from which plaintiff is suffering was not caused by her inhaling carbon tetrachloride vapors while she was an invitee in defendants' machine shop. In attempting to sustain the affirmative, plaintiff started out with the burden of overcoming the uncontroverted fact that in all medical experience there has been no known case of transverse myelitis caused

by carbon tetrachloride and of establishing hers as the first such case. This she attempted to do by the process of excluding all known causes of transverse myelitis as the cause of her disease and of establishing carbon tetrachloride poisoning as the probable cause.

The evidence in plaintiff's behalf tended to show that she commenced to work in defendants' machine shop in June 1943; that in the latter part of July defendants commenced to use carbon tetrachloride in connection with certain drilling and reaming operations; that as a result of the operations the carbon tetrachloride was vaporized and mixed with the air in the shop; and that plaintiff by being exposed thereto inhaled it. She took a vacation from September 10 to September 20. Shortly before she took her vacation and after she returned therefrom until she quit work on September 24, she experienced what were referred to upon the argument as preliminary symptoms of carbon tetrachloride poisoning, consisting of a lump-like feeling in the stomach, nausea, headaches, numbness and tingling in the legs, and a tendency to urinate frequently. Three other employes experienced similar symptoms but without the same consequences as plaintiff.

Plaintiff called three medical witnesses, who gave expert opinions that the transverse myelitis from which she was suffering was caused by the carbon tetrachloride vapors she inhaled in defendants' shop. Neither the medical experts nor the other witness who preceded them testified to the density of the concentration of the carbon tetrachloride vapors in defendants' shop. The medical experts in their testimony enumerated trauma and various sorts of germ infection as known causes of transverse myelitis and excluded all of them as the cause in plaintiff's case. One of plaintiff's medical experts, Dr. Henry W. Quist, did not testify as to what concentration of carbon tetrachloride was harmful, but the others, Dr. Julius Johnson and Dr. J. F. Corbett, testified that it is generally recognized by medical men that the concentration must be 100 parts of carbon tetrachloride to 1,000,000 parts of air. Without knowing whether the concentration to which plaintiff

was exposed in defendants' shop was of such density as to be harmful and without showing that carbon tetrachloride might be an efficient cause of plaintiff's transverse myelitis, the doctors testified that in their opinions the inhalation by plaintiff of carbon tetrachloride vapors in defendants' shop was the cause of the transverse myelitis from which she was suffering. This they did by a process of reasoning that, since plaintiff and the three other employes had the so-called preliminary symptoms of such poisoning and there was no other known cause thereof, plaintiff's disease was caused by such poisoning. Dr. Quist testified that, because plaintiff was exposed to carbon tetrachloride and because he found no other cause for her condition, in his opinion her transverse myelitis was caused by such exposure. While he did not expressly state that his opinion was based upon the assumption that the concentration to which plaintiff was exposed was harmful, an assumption that it was is as implicit in his testimony as if he had so stated in express terms. The testimony of Dr. Johnson followed the same general pattern. He testified that his opinion that plaintiff's exposure to carbon tetrachloride vapors in defendants' shop was the cause of her transverse myelitis was based upon the assumption that the concentration thereof was harmful. This statement he qualified by a further one, for which there was no foundation, that plaintiff was allergic to carbon tetrachloride. Of course that opinion must be rejected. Dr. Corbett testified that his opinion was based upon the assumption, without knowing whether it was the fact, that the concentration to which plaintiff was exposed was at least 100 parts carbon tetrachloride to 1,000,000 parts of air. Plaintiff also called as an expert witness a biological chemist, Dr. Durey H. Peterson, who testified that a high concentration, without specifying what he meant thereby, was toxic and that it would make no difference whether such a concentration was inhaled all at once or several times over a period of time.

There was evidence in plaintiff's behalf that defendants used from two to three gallons of carbon tetrachloride per week in their shop and that the carbon tetrachloride so used was vaporized

and mixed with the air to which plaintiff and others were exposed, but there was none as to the density of the concentration thus formed.

The evidence on behalf of defendants tended to show that they used only one gallon of carbon tetrachloride per week; that the concentration resulting therefrom was .585 parts carbon tetrachloride to 1,000,000 parts of air; and that if plaintiff's version as to the amount used was correct (the maximum of three gallons per week) the concentration was 1.755 parts carbon tetrachloride to 1,000,000 parts of air. Their testimony also showed that in order to be harmful the concentration must be at least 100 parts carbon tetrachloride to 1,000,000 parts of air. These facts as to the density of the concentration in defendants' shop and the density required to be harmful were thoroughly established and stand uncontroverted and undisputed.

The testimony of defendants' medical experts showed that transverse myelitis might be caused not only by trauma and certain germ infections, as testified to by plaintiff's experts, but also by virus infection. They also testified that, based on plaintiff's version of the facts as to the onslaught, progress, symptoms, and other facts concerning her disease, it was their opinion that it was not caused by her inhaling carbon tetrachloride vapors in defendants' shop. They testified that inhaling a concentration of less than 100 parts of carbon tetrachloride to 1,000,000 parts of air was harmless, regardless of the duration of exposure thereto. The uncontradicted testimony of defendants' medical experts was to the effect that virus is a common cause of transverse myelitis and that generally it is the cause where the disease cannot be traced to other known causes. They testified that plaintiff's was such a case.

Plaintiff failed in her effort to establish carbon tetrachloride poisoning as the cause of the transverse myelitis from which she is suffering, because it appears as a matter of law that the concentration to which she was exposed was harmless. As has been shown, this is true whether the amount used was as claimed by

defendants or by plaintiff. If the latter, the concentration was only 1.755 parts of carbon tetrachloride to 1,000,000 parts of air, or less than two percent of the density required to be harmful. Because of that fact and the further ones that it was not shown that the so-called preliminary symptoms of carbon tetrachloride poisoning present in plaintiff's case and those of the other three employes, who testified in her behalf, were peculiar to cases of carbon tetrachloride poisoning and might not be found in cases of other diseases also, and that carbon tetrachloride poisoning was not shown to be a cause of transverse myelitis, the cases of the other three employes are without any significance and afford no basis for an inference either that they were suffering from carbon tetrachloride poisoning or that, because plaintiff's symptoms were similar to theirs, she was suffering from it. Under the evidence, it appears as a matter of law that they could not have been suffering from carbon tetrachloride poisoning, whatever may have been the cause of their illness. Dr. Johnson's testimony that plaintiff was allergic to carbon tetrachloride poisoning and that for that reason he attributed her transverse myelitis to inhaling the carbon tetrachloride vapors in defendants' shop must be rejected, for the reason already stated that there is absolutely no basis for an opinion that plaintiff was allergic to carbon tetrachloride poisoning. Furthermore, such testimony cannot stand against the uncontradicted and overwhelming testimony that the concentration to which plaintiff was exposed was harmless regardless of the duration of her exposure to it. Dr. Peterson's testimony to the effect that the toxic effects of carbon tetrachloride are cumulative and that repeated exposures will sooner or later produce a toxic condition is without any significance here, for the reason that his opinion was based upon the assumption that a concentration in order to be harmful must be "toxic." The evidence here conclusively shows that the concentration in question was not toxic.

Our conclusion is that in any view of the evidence plaintiff failed to establish that the transverse myelitis from which she is suffering was caused by inhaling carbon tetrachloride vapors in

defendants' shop, because the concentration to which she was there exposed was harmless and could not have caused her disease, regardless of the duration of the exposure. It may be conceded that she succeeded in eliminating such known causes of transverse myelitis as trauma and germ infection as the cause of the disease in her case, but she did not eliminate virus infection as the cause. It did not devolve upon defendants to prove that it was. Plaintiff's case must fail, because she did not establish that the transverse myelitis with which she is afflicted was caused by carbon tetrachloride poisoning.

In that view, the verdicts in favor of the defendants were right as a matter of law. Plaintiff failed to prove her case, and the verdicts were the only ones permissible under the evidence.

■ There was no error in refusing to charge that plaintiff's bringing and maintaining the present action constituted an election barring her from proceeding further against either Kimberly-Clark or defendants for compensation benefits under the workmen's compensation act. Plaintiff's cause of action in no way involved or depended on whether there was such an election. Her cause of action was based on alleged negligence. The issues with respect to such negligence were submitted to the jury under instructions unchallenged here. The effect of the alleged election related not to plaintiff's right to recover, but to her rights in other proceedings to be commenced after the termination of this case only if the decision should be against her. The proper proceedings in which to determine whether there was an election and the effect thereof would be those to be so commenced, and then only if the party against whom the proceedings were instituted raised the question. Certainly, it would be improper to decide the question in advance of the commencement of such proceedings and before it was raised by a proper party. For the reasons stated, the request to charge related to an issue immaterial here. It is not error to refuse to charge on an immaterial issue. Rosenberg v. Nelson, 145 Minn. 455, 177 N. W. 659; State v. Shippey, 10 Minn. 178 (223), 88 Am. D. 70; 53 Am. Jur., Trial, §

578.  See, Creteau v. C. & N. W. Ry. Co. 113 Minn. 418, 129 N. W. 855.

Invoking the rule of Hubbard v. Montgomery Ward & Co. Inc. 221 Minn. 133, 21 N. W. (2d) 229, and similar cases, plaintiff urges that we should grant her the right to a new trial for the reason that she may be able to obtain further evidence to support her right of recovery and make a case for the jury.  In the cited case, we held that upon a reversal we will not order judgment against a party who has recovered a verdict and may be able on a new trial to present evidence raising a fact issue as to whether he was entitled to recover.  An appellate court upon a reversal has discretion to order judgment absolutely against the respondent or to grant a new trial, depending on whether respondent might be able upon a retrial to present a question of fact as to whether he is entitled to recover.  Here, plaintiff did not recover a verdict, and the only question in this court is whether there was reversible error.  Where there is no reversible error, it is the duty of the appellate court to affirm.  5 C. J. S., Appeal and Error, § 1848. This is such a case.

Affirmed.