ANTHONY KOENIGS v. EUGENE THOME.[1]

March 19, 1948.

No. 34,577.

[1]Reported in 31 N. W. (2d) 534.

*Moonan, Moonan & Friedel,* for appellant.
*Plunkett & Plunkett,* for respondent.

MATSON, JUSTICE.

Appeal from an order denying defendant's motion for a new trial.

Plaintiff recovered a verdict for $8,500 for personal injuries sustained while a passenger in defendant's car. How the accident happened is immaterial, in that liability for damages in some amount is admitted on this appeal. Therefore, all assignments of error relate and are subsidiary to the sole fundamental issue of whether the amount of the verdict is so excessive as to indicate passion and prejudice.

The verdict was for $8,500. If we deduct the special damages of $560.29, we have left nearly $8,000 for general damages. Plaintiff suffered extremely severe and painful injuries, some of which are permanent. His lower left jaw was fractured in two places. In order to reduce these fractures, the jaw was immobilized by wiring the lower and upper jaws together. For a period of eight weeks plaintiff's only nourishment was obtained through a glass tube. Although these fractures have mended, plaintiff is subject to the painful experience of having his lower jaw slip out of joint unless he is careful in chewing. One tooth was lost. His right cheekbone was smashed inward and shattered into fragments. In order to reduce this multiple fracture, it was necessary to make an incision below the hairline and insert an instrument to push the fragments into place. Although fully healed, the right cheekbone is slightly depressed and will always be so. In addition to this disfigurement, plaintiff is afflicted with an apparently permanent numbness of the right side of his face extending down over his lips. He also suffered a mild concussion of the brain, which for a period of two weeks after the accident caused him to be confused and irrational.

Besides these head injuries, plaintiff sustained a severe blow to the chest which compressed his ribs to such an extent that his lungs were punctured. Blood filled the pleural cavity and created a painful and critical condition. For ten days he was constantly choking from the blood which had entered the air passages of his lungs. The same crushing injury lacerated one of his kidneys, causing further pain and disturbance of bodily functions. In addition, the muscles and ligaments in the upper part of his back were torn and sprained, with the result that he has been unable to continue the farm work which before the accident had been his main occupation. This injury to his back, according to Dr. David P. Anderson, is a permanent disability directly attributable to the accident and in no way related to plaintiff's preëxisting condition of Friedreich's ataxia.

For approximately eight years prior to the accident, plaintiff was afflicted with a progressive and incurable degenerative disease of the spinal cord known as Friedreich's ataxia. The first symptoms of the disease are an impairment in the function of the legs in walking. According to medical testimony, it commences with the lower extremities, gradually progresses upward to the arms, and finally incapacitates the whole body. The progression, which varies with the individual, covers a period of from 20 to 40 years. Plaintiff, who was 32 years of age at the time of the trial, first became afflicted with the disease when he was 23 years old. Before the accident he was able to do farm work, but afterward he was wholly incapacitated.

Defendant assigns as error the submission to the jury of the issue of the aggravation of this preëxisting disease. Dr. Anderson, who treated plaintiff for his injuries from the time of the accident until about two months prior to the trial, was of the opinion that the injury had not aggravated the disease, but that the injuries, coupled with the disease, permanently disabled him from performing farm work. Dr. Garfield E. Hertel, an expert witness called by defendant, testified that in his opinion Friedreich's ataxia could not be aggravated or its progression accelerated by the accidental injuries which

plaintiff sustained. Neither Dr. Anderson nor Dr. Hertel had seen or known plaintiff prior to the accident. Directly to the contrary was the testimony by Dr. Paul Schneider, a general practitioner who had been plaintiff's personal physician for a number of years. Dr. Schneider was of the opinion that similar injuries would not aggravate every case of Friedreich's ataxia, but that the injuries in this instance could and did aggravate the disease. He testified that the strain or shock of the accident, coupled with the disabling injuries, had indirectly accelerated the progress of the disease. Trauma, he said, should be avoided.

1-2. There was no error in submitting the issue of aggravation to the jury. Defendant contends that the opinion given by Dr. Schneider is not an expert opinion based on scientific knowledge. In other words, Dr. Schneider's qualifications as an expert are challenged. It is elementary that whether a witness qualifies as an expert is a question of fact to be decided by the trial court, and its determination will not be reversed on appeal unless it clearly appears that it was not justified by the evidence or was based on an erroneous view of legal principles. Beckett v. Northwestern Masonic Aid Assn. 67 Minn. 298, 69 N. W. 923; 2 Dunnell, Dig. & Supp. § 3335, and cases there cited. We find no misapplication of legal principles and the evidence sustains a finding that Dr. Schneider was competent to give an expert opinion. His opinion was not based on conjecture and speculation (using the word "speculation" in the sense of indicating an absence of a factual basis, see, Hiber v. City of St. Paul, 219 Minn. 87, 16 N. W. [2d] 878), but on an adequate factual foundation in the form of knowledge obtained from his professional observations and treatment of plaintiff over a number of years up to and including the time of trial. See, Kieffer v. Sherwood, 184 Minn. 205, 238 N. W. 331. In short, we have here nothing more than a conflict in expert opinion. A conflict in the opinions of expert witnesses is to be resolved by the jury, and in determining the comparative weight to be given to the respective opinions the jury may consider the qualifications of each expert and the source of his information. In re Estate of Gordon, 184 Minn. 217, 238 N. W. 329;

Kieffer v. Sherwood, 184 Minn. 205, 238 N. W. 331; 2 Dunnell, Dig. & Supp. § 3334. The resolving of a conflict in expert opinion by the jury obviously is not of and by itself open to the objection that the jury is thereby ignoring all expert opinion in a matter of science or specialized art where laymen can have no knowledge. Moratzky v. Wirth, 74 Minn. 146, 76 N. W. 1032. The evidence reasonably sustains a finding that plaintiff's preëxisting disease was aggravated by the accidental injuries.

As a further element of damages in addition to the injuries, we have the loss of earning capacity. Prior to the accident plaintiff was earning wages as a farm hand. Even if we assume that he earned an average of only $500 a year, the jury could reasonably find, in the light of the medical testimony, that the usual and normal progression of the disease of Friedreich's ataxia, in the absence of the accidental injuries, would have left plaintiff with at least several additional years of earning capacity. Although the jury could reasonably have found that his earnings were considerably more than $500 per year, there is no object in considering the matter further, because, even at the minimum loss-of-earnings figure, it is clear that the verdict was not excessive, in the light of plaintiff's extensive, serious, painful, and permanent injuries.

No purpose will be served by comparing this verdict with the excessive verdicts of other cases cited by defendant. There is no yardstick common to all cases, without regard to the peculiar facts of each case, for the measurement of damages. No two cases are alike, and the value of the dollar varies from time to time. See, Odegard v. Connolly, 211 Minn. 342, 1 N. W. (2d) 137; Ranum v. Swanson, 220 Minn. 170, 19 N. W. (2d) 327; 2 Dunnell, Dig. & Supp. § 2595.

In view of the fact that the verdict is clearly not so excessive as to indicate passion and prejudice, there is little purpose in considering the other assignments of error. Counsel for plaintiff pursued an improper and prejudicial line of argument before the jury, but it was not wholly uninvited. See, Hinman v. Gould, 205 Minn. 377, 382, 286 N. W. 364, 366. The trial court expressly instructed the jury to disregard such improper argument, and it is obvious that

the court's instruction was obeyed and that no prejudice resulted. See, DeV.ere v. Parten, 222 Minn. 211, 23 N. W. (2d) 584.

The trial court read M. S. A. 602.01 to the jury and then instructed the jurors that the evidence in the instant case had *replaced* the statutory presumption of fraud in obtaining a written statement from plaintiff within 30 days after he sustained his injuries. The trial court further instructed the jurors that they should determine the character and value of the written statement from the testimony presented. In effect, the jury was instructed that the statuory presumption of fraud had wholly disappeared upon the introduction of evidence and that it was therefore not a factor for them to consider. There was no error. Ryan v. Metropolitan L. Ins. Co. 206 Minn. 562, 289 N. W. 557; Donea v. Massachusetts Mut. L. Ins. Co. 220 Minn. 204, 212, 19 N. W. (2d) 377, 382; Swanson v. Swanson, 196 Minn. 298, 265 N. W. 39.

The order of the trial court is affirmed.

MR. JUSTICE FRANK T. GALLAGHER took no part in the consideration or decision of this case.

