SQUARE A. ROBINSON v. WALTER BUTLER AND ANOTHER.[1]

May 25, 1951.

No. 35,446.

See, Robinson v. Butler, 226 Minn. 491, 33 N. W. (2d) 821.
*Patrick J. Ryan* and *G. P. Mahoney,* for appellant.
*McGuigan & McGuigan,* for respondent.

MATSON, JUSTICE.

Appeal by defendant from an order denying defendant's motion for a new trial.

In this automobile accident case, we are concerned with only two questions, namely (1) whether the verdict is sustained by the evidence; and (2) whether a verdict of $54,000 is so excessive as to indicate passion and prejudice.

On February 12, 1947, defendant Walter Butler, who furnished the car, employed plaintiff to drive him from St. Paul to Paynesville. Butler sat in the front seat, with plaintiff at the wheel. While proceeding in a westerly direction along a two-lane concrete highway known as No. 12, they passed through the village of Montrose at about 10 a. m. Taking, as we must, the view of the evidence most favorable to the verdict, it appears that just after leaving Montrose, and while they were still going at a speed of only about 30 miles per hour, another car coming from behind—driven by one Torg Knudsen—in attempting to pass, turned into the left lane and pulled up until it was approximately abreast the Butler car. While the Butler and Knudsen cars were thus momentarily occupying both lanes of the highway, a cattle truck, at a distance of from 250 to 500 feet, was approaching from the opposite direction. Confronted with this perilous situation, plaintiff, hoping to avoid a collision, turned the Butler car gradually toward the right shoulder of the highway. Simultaneously, the Knudsen car dropped

behind the Butler car.[2]  As plaintiff was in the act of turning the Butler car to the right shoulder, his front-seat companion, defendant Butler, grabbed the steering wheel, apparently from its underside, and turned the car to the left, causing it to shoot at an angle to the left across the highway, strike a guy wire, and go into a ditch about 8 or 10 feet deep.  It rolled over several times, and plaintiff was seriously injured.

The evidence as thus stated, in the light most favorable to the verdict, has its support primarily in plaintiff's testimony.  Butler testified that he did not put his hands on the steering wheel or in any manner interfere with the control of the automobile.  It is Butler's contention that when plaintiff turned the car to the right it was caused to skid to the left, either by reason of the slippery road surface or by a locking of the front wheels through a sudden application of the brakes.  Plaintiff said that, although certain patches of the highway had some ice, the road surface where the accident occurred was dry and, aside from a little dampness, was not bad at all.  Knudsen testified that the road was not icy, and, although frosty in spots, that it was for the most part dry.  Butler observed that there had been a light frost and that the road was slippery in spots in the shadows of buildings or trees so as to require cautious driving.  The driver of the cattle truck and his companion said that it was very slippery in streaks and. that it was frosty where the accident happened.  They saw skid marks leading to the left across the pavement.  The men in the truck also testified that the Butler car first slid off to the right and then skidded at an angle to the left across the road, and that the wheels of the car appeared to be locked or frozen.

■  The evidence is in conflict as to what caused the car to swerve across the highway to the left.  Conflicts in evidence, however sharp, are to be resolved by the jury, and its verdict will not be

---

[2]Torg Knudsen was originally joined as a defendant. His demurrer to plaintiff's complaint was, however, sustained by the trial court and affirmed upon appeal. See, Robinson v. Butler, 226 Minn. 491, 33 N. W. (2d) 821, 4 A. L. R. (2d) 143.

set aside unless it is manifestly and palpably contrary to the evidence as a whole. Although the verdict rests primarily upon plaintiff's personal testimony, we cannot say that it does not have reasonable evidentiary support. Evidence is to be measured by its persuasive weight and not by any arbitrary counting of witnesses. A jury's verdict may therefore be adequately sustained by the testimony of a single witness, even though such witness is a party to the action and even though his testimony is in direct conflict with that of several other witnesses. Benson v. Northland Transp. Co. 200 Minn. 445, 274 N. W. 532.

■ Is a verdict of $54,000 so excessive as to indicate passion and prejudice? The reasonableness of the verdict is largely to be measured by the nature, extent, and permanency of plaintiff's injuries. We have here a conflict in evidence, which stems primarily from the divergent views of the medical experts. Dr. Roland Keefe, plaintiff's personal physician, and Dr. Robert M. Burns, another medical expert called by plaintiff, both testified that in their opinion plaintiff, as a result of his injuries, is permanently and totally disabled. Contrary to defendant's contention that these two experts based their opinion of disability primarily on subjective symptoms, their testimony did in fact relate to a number of objective indications of injury. It appears objectively that plaintiff sustained a hemorrhage that extended approximately from the left ear down as far as his lower rib under the shoulder blade, as evidenced by a purple discoloration; that he also suffered a comminuted fracture of the left clavicle or collarbone which has resulted in a permanent one-half inch shortening of the shoulder. An electric cardiogram reading displayed some damage to the left ventricle muscle of the heart, which was also corroborated by auscultation. It was also observed that plaintiff does not walk with ordinary freedom, holds his left arm close to his side, holds his left shoulder higher than his right, and lacks a normal rotation of his neck and a normal motion of his head; that he has difficulty in stooping over and in straightening up again; and that he can scarcely raise his left arm to a horizontal position without exhibiting

pain and faintness. X rays further revealed injuries to his fifth and sixth cervical vertebrae. A straight-leg test pointed to an injury resulting in a limitation of motion of his spine. A Babinski test indicated that there was some interference with the nerve tract between the brain and the lower part of the spine. A measuring machine revealed that plaintiff had lost the normal strength of his hands. The foregoing objective symptoms were supplemented and fortified by those of a subjective nature to the effect that if plaintiff placed his head on his chest he became dizzy and pain shot up through his head and over his forehead; that he had pain in his chest; that if he rotated his left arm or moved it up and down above his shoulders he developed a pain that gave him severe headache and nausea; and that if he dropped his left arm down in front he had difficulty in raising it again. Plaintiff's medical experts were of the opinion that he would never again be able to pursue his usual occupation as a window washer and that he was, as a result of the injuries sustained, totally and permanently incapacitated.

Dr. Arthur H. Pedersen, defendant's expert witness, testified, however, that the X-ray pictures used by him failed to show any abnormality except in the left clavicle and a narrowing of the cushion or the disc between the fifth and sixth cervical vertebrae. He explained that the latter condition is not due to fracture or dislocation, so that it is probably due to disease as part of a degenerative process. He further said that plaintiff's reflexes were all active, a condition indicating the absence of any disturbance in the sensory parts of plaintiff's anatomy which extend to the spinal cord, into the spinal cord itself, or into the segments that extend to the muscles. Dr. Pedersen could find no objective indication of any injuries caused by the accident which could account for plaintiff's subjective complaints. In the light of the conflicting expert medical opinion and the evidence upon which it was based, the jury could reasonably find that plaintiff was totally and permanently disabled. A conflict in the opinion of expert witnesses is to be resolved by the jury, and in determining the comparative weight to be given to the respective opinions the jury may consider the quali-

fications of each expert and the source of his information. Koenigs v. Thome, 226 Minn. 14, 31 N. W. (2d) 534; In re Estate of Gordon, 184 Minn. 217, 238 N. W. 329; Kieffer v. Sherwood, 184 Minn. 205, 238 N. W. 331; 2 Dunnell, Dig. & Supp. § 3334.

Defendant maintains that the intervention of passion or prejudice might possibly be inferred from the facts that defendant lives at 2120 Summit avenue, St. Paul; that he has a summer home at Lake Koronis, Paynesville, Minnesota; and that Dr. Pedersen lives at 1865 Summit avenue, St. Paul. Testimony of the residential addresses of parties or witnesses are routine questions in any action and certainly could not be the basis for setting aside a verdict on grounds of passion or prejudice. Defendant further maintains that the influence of passion or prejudice might be inferred from certain questions—to which objections were sustained—which indicated that prior to the accident plaintiff owned his home clear of encumbrances and supported his wife and four children, and that since the accident he has been receiving financial assistance. Such unanswered questions obviously could not produce the requisite passion or prejudice which influences a jury to award an excessive verdict, especially where other testimony revealed that plaintiff has lost his business and has been unable to work steadily since the accident. In fact, the evidence shows that prior to the accident plaintiff's earnings were $2,500 per year, and that the balance of his life expectancy is 22.12 years. In the light of plaintiff's life expectancy, loss of earnings, and pain and suffering, we cannot say that a verdict of $54,000 is so excessive as to indicate passion or prejudice on the part of the jury.

The order of the trial court is affirmed.

Affirmed.