DONALD WILSON v. ANNA DAVIDSON AND ANOTHER.[1]

December 22, 1944.

No. 33,801.

[1]Reported in 17 N. W. (2d) 31.

*Freeman, King & Geer,* for appellants.

*William H. DeParcq, John Edmund Burke,* and *Donald T. Barbeau,* for respondent.

YOUNGDAHL, JUSTICE.

Donald Wilson, a minor, commenced an action by his father and natural guardian, Harry Wilson, against defendants to recover damages for personal injuries sustained in an automobile accident on September 17, 1939, at the intersection of Lyndale avenue south and Sixty-sixth street, Richfield, in Hennepin county. After issue

had been joined and the case put on the calendar awaiting trial, a compromise and settlement was agreed upon between the defendants and Harry Wilson, as father of Donald and acting in his behalf. The father, in his capacity as natural guardian of Donald, petitioned the district court for approval of the settlement, pursuant to Minn. St. 1941, § 540.08 (Mason St. 1940 Supp. § 9172). In the affidavit of the physicians supporting the petition, it is stated that the injury Donald sustained in the accident was a bilateral dislocation of the mandibular joint of the jaw and that he had entirely recovered from the effects of the accident. On January 8, 1940, the court approved the settlement and authorized Harry Wilson, as father and natural guardian of Donald, to settle the matter upon the terms agreed upon as set forth in the petition. Under the settlement, $337 was to to be paid to the minor and $348 to the father. Stipulation of dismissal was executed by the attorneys for the parties, upon which an order was made on January 10, 1940, ordering judgment of dismissal with prejudice. Incidental to the settlement, on January 8, 1940, the father, as natural guardian of Donald, executed a verified release to the defendants releasing them from any claim for all known and unknown injuries. On August 12, 1941, plaintiff's present attorney was substituted to represent him and, in his behalf, moved for an order vacating and setting aside the order of January 8, 1940, approving the settlement and requesting that the case be reinstated upon the calendar for trial. The motion was heard by the same judge who signed the order of approval. Supporting the motion were numerous affidavits, among them one by the attending physicians, who stated that at the time their first affidavit was signed they were of the opinion that the dislocation of the jaw which plaintiff sustained in the accident was of the simple and ordinary type, whereas "it now appears that affiants were mistaken as to the nature and character of the injury sustained by the said Donald Wilson."

On February 6, 1942, the court made an order as follows:

"1. That that certain order, signed by the undersigned on Jan-

uary 8th, 1940, approving the settlement in the above entitled cause, *is hereby annulled, vacated and set aside.*

"2. That the clerk of the above court is hereby directed to place said cause upon the waiting list for trial, and after the expiration of thirty (30) days from this order, to assign said cause to one of the judges of the above named court for trial." (Italics supplied.)

Subsequent to that order, defendants moved for a reopening of the matter on the ground that they had not had sufficient time to file a brief in opposition to the motion. To provide such further time, the order of February 6, 1942, was vacated and further proceedings were had, some of which had to do with protecting defendants' right of appeal from the order. No useful purpose will be served in detailing these various proceedings. It is sufficient to state that an order was finally made on June 15, 1942, granting to plaintiff the same relief as provided for in the order of February 6, 1942. The order of June 15, 1942, with which we are now concerned, reads as follows:

"The above entitled cause being on the special term calendar of this court came duly on to be heard before the undersigned on the *motion of plaintiff for an order setting aside and vacating that certain order of this court dated January 8, 1940, signed by the undersigned approving the settlement in this cause* and permitting plaintiff to reinstate said cause upon the calendar of the said court as a jury case.

"William H. DeParcq appearing for plaintiff in support of said motion; and Freeman & King appearing in opposition thereto.

"After hearing the arguments of counsel and being fully advised in the matter,

"*It is ordered that said motion be and the same hereby is in all things granted.*

"And it is further ordered that upon the filing of a note of issue, said cause be placed upon the general term calendar of this court for trial and assigned for such trial by the clerk. Subject, how-

ever, to the right of either party to serve and file such amended or supplemental pleadings as may be advised." (Italics supplied.)

After amended pleadings were served, the action was tried. Among the issues submitted to the jury was the one as to whether there was a mutual mistake of fact in the execution of the release. A verdict of $6,800 was returned for plaintiff. Upon the court's refusal to grant defendants' motion for judgment *non obstante* or a new trial, this appeal followed.

■ Defendants question the correctness of procedure in the trial court's submission to the jury of the issue of mutual mistake and the sufficiency of the evidence to show that there was in fact a mutual mistake as to the injuries which Donald sustained. In view of our conclusion that the court's order of June 15, 1942, vacated the order of January 8, 1940, approving the settlement, and that therefore, under Minn. St. 1941, § 540.08 (Mason St. 1940 Supp. § 9172), the settlement was invalid, these questions become moot, and we refrain from discussing them. As far as this phase of the appeal is concerned, we confine ourselves to a consideration of the effect of the order of June 15, 1942, and whether there was adequate basis and authority for it. The language of the order is clear and specific. It plainly vacates the prior order approving the settlement. Defendants rely upon the language in several memoranda attached to the court's orders as indicating that the court did not intend to vacate the order approving settlement, but intended to leave the matter of the vacation of the order to the court and jury at the trial of the action. None of these memoranda are made a part of the respective orders, except the short memorandum attached to the order of June 15, 1942. Based upon some of the language used in the various memoranda, if separated from its context, it may with good reason be argued that the court was apparently leaving the matter of the vacation of the order approving settlement to the court and jury to determine at the trial. But, if the memoranda are considered in their entirety, as they should be, together with the order, rather than by a process of etymological dissection, we see no inconsistency between the memoranda and the

order. It seems evident that the court intended to and did exercise its discretion in vacating the order of approval. True, the court was uncertain and confused as to the procedure to be followed in the determination of the issue as to mutual mistake in the execution of the release. This uncertainty accounted for the somewhat confusing and ambiguous language in the memoranda. But there was no uncertainty in the court's mind after the hearing on the motion that the order of approval should be vacated. It is obvious that the court intended to remove the bar existing against plaintiff to a trial of the action by virtue of the approval of the settlement by the court. If plaintiff had merely secured a reinstatement of the case upon the calendar and proceeded to trial without directly attacking the order of approval and securing its vacation, such order would have been an insurmountable obstacle in his path. Such a settlement approved by the court cannot be attacked collaterally. Ernst v. Daily, 202 Minn. 358, 278 N. W. 516. In vacating the order of approval, the court obviously had this in mind. It wanted plaintiff to have the opportunity of trial with that bar removed. To hold otherwise would be to disregard the plain and unambiguous language of the order, which, in explicit terms, grants the motion to vacate the order of approval.

But even if it be conceded that the language of the memoranda is inconsistent with the order, that will not assist defendants. It is the rule in this state that facts stated in a memorandum made a part of the court's decision which are not inconsistent with the facts specifically found become a part of the findings. Sime v. Jensen, 213 Minn. 476, 7 N. W. (2d) 325. Where the findings are merely inferences drawn from specific facts stated in the memorandum, the specific facts found by the court are controlling, and its conclusions, insofar as they are not consistent therewith, must give way. Thomas Peebles & Co. v. Sherman, 148 Minn. 282, 181 N. W. 715. But where the finding is clear and specific, statements in the memorandum may not be used to overturn such specific finding. McGovern v. Federal Land Bank, 209 Minn. 403, 296 N. W. 473. Even though a memorandum is made a part of the order, it cannot

be used to overturn a specific provision in the order. In the instant case, therefore, any inconsistent statement in the memorandum must give way to the specific provision in the order vacating the order of approval.

The order of approval, having been vacated and set aside, plaintiff's position is the same as if no settlement had been made. Section 540.08 clearly invalidates a compromise or settlement that is made without approval of the court. It reads as follows:

"A father, or, in case of his death or desertion of his family, the mother, may maintain an action for the injury of a minor child, and a general guardian may maintain an action for the injury of his ward. If no such action is brought by the father or mother, an action for such injury may be maintained by a guardian ad litem, either before or after the death of such parent. * * * *and no settlement or compromise of any such action shall be valid unless the same shall be approved by a judge of the court in which such action is pending.* (Italics supplied.)

The father may, under § 540.08, with approval of the district court, settle a minor's cause of action for personal injuries without suit actually begun. Ernst v. Daily, 202 Minn. 358, 278 N. W. 516, *supra*. But the statute makes the approval of the court a prerequisite to the validity of the settlement. With the bar of the court approval removed, plaintiff was free to prosecute the action to trial, and settlement was not available as a defense. For that reason, we need not consider what transpired subsequently at the trial, as far as the release is concerned.

■ Though defendants concede that the procedure adopted by plaintiff was correct in moving to set aside the order of approval, they assert that there was no justification or authority for the court's action in vacating it. The court may always, for good cause, review its orders. Picciano v. D. M. & N. Ry. Co. 102 Minn. 21, 25, 112 N. W. 885, 886. The fact that, under the statute, settlements of this kind to be valid must receive the approval of the court in which the action is pending does not deprive the court of

the right subsequently to reconsider the matter upon an application to vacate the order. Dasich v. La Rue Min. Co. 126 Minn. 194, 196, 148 N. W. 45, 46. A showing of fraud or bad faith is not necessary to justify the court in vacating its order of approval of settlement. If a showing is made indicating that an injustice will be done the minor if the approval is allowed to stand because of separate and distinct injuries sustained by him not contemplated by the parties or considered in the settlement, the court has the authority to exercise its discretion in vacating the order. As the court said in the Dasich case (126 Minn. 196, 148 N. W. 46):

"* * * That the facts justified the court, in the exercise of its sound judgment, in vacating the settlement seems clear, notwithstanding the fact that there was no affirmative showing of fraud or bad faith on the part of defendant. An entirely new situation, as respects the merits of plaintiff's cause of action, was presented on the application to vacate the settlement and a fact brought out, which we are entitled from the record to assume was not presented when the order of approval was made."

In the instant case, the same court which had signed the order of approval was confronted with a showing indicating that a situation had arisen as to plaintiff's injuries which was unknown to the parties at the time the settlement was made. This justified the court in the exercise of its sound discretion in vacating its order. It was not required to take oral testimony. The showing here was comprehensive and adequate enough to justify the order without it. It is discretionary with the court whether oral testimony shall be taken in the hearing on a motion. 4 Dunnell, Dig. § 6499.

■ We believe that the showing plaintiff made in support of the motion to vacate the order was sufficient to justify the order of vacation. The order approving the settlement was based upon the petition of the father and the affidavits of Doctors Benesh and Benesh, attending physicians. At the time the petition for approval of the settlement was presented, no information was given the court as to plaintiff's injuries except that he had sustained a bilateral

dislocation of the mandibular joint of the jaw and had entirely recovered from the effects of the accident. The motion to vacate the order of approval was supported by the petition of the father and numerous affidavits. The father detailed the various difficulties that had arisen subsequent to the settlement in connection with distinct injuries sustained by plaintiff which were not known at the time the compromise was made. He stated that he never would have asked for approval of the settlement had he known that such injuries existed. Supporting the motion also was the affidavit of the same physicians who had made the affidavit used in support of the petition for approval of the settlement. They state in their second affidavit that they were of the opinion originally that plaintiff had suffered a dislocation of the jaw of the simple and ordinary type where there is a stretching of the capsule; that in such cases subsequent trouble and dislocation are not anticipated and they were then of the opinion that plaintiff was completely cured; but that it appears that they were mistaken as to the nature and character of plaintiff's injury. They further state:

"That it is now reasonably certain in the opinion of affiants that a tear exists in both capsules and that this is a permanent condition; that at the time of the original treatment and at the time of the settlement of the case and in the month of January, 1940, affiants were of the opinion that there was no such tear; that had affiants known at that time that both capsules were torn, affiants would never have signed any affidavit to the effect that Donald Wilson had recovered; that a tear in the capsule is an altogether different injury from a mere stretch or temporary relaxation thereof; that a tear in the capsule is an injury that is different in its nature and character from the ordinary case of dislocation; that a dislocation from torn capsule is a permanent condition and of a far more serious nature and character and will cause recurrent dislocations and permanent pain, trouble, discomfort, and disability, unless it can be remedied or repaired by a surgical procedure."

There was also the affidavit of Dr. Carl W. Waldron, an expert in oral and plastic surgery, who stated in substance that plaintiff was suffering from a very definite disability in the temporal mandibular joints; "that the conditions existing in the jaws of [plaintiff] * * * are of a permanent and painful character unless remedied by medical, surgical and dental attention." The motion was also supported by an affidavit of Dr. Julius Sloan, a dentist, who specialized in oral surgery. He stated that plaintiff was suffering from an injury which will require a major correction, which correction and medical care and procedure, if successful, will require an expenditure, in his opinion, of at least $1,000. In addition to these affidavits and that of the minor, there was submitted the affidavit of Clement J. Tierney, who originally acted as attorney for him in the proceedings of settlement. In effect, he states that the settlement was made under a mutual mistake of fact as to the type and character of the injury; that he was led to believe from the information received by him from the attending physician that plaintiff had made a complete recovery; and that if he had had the information at the time of the settlement that plaintiff had suffered a torn capsule on each side of the jaw he never would have permitted the settlement.

In opposition to the motion, defendants furnished the affidavit of Dr. Kenneth Bulkley, who stated that he examined plaintiff on October 26, 1939, following the accident, and found him suffering from a bilateral dislocation of the jaw; that in every jaw dislocation there is a stretching and tearing, to a greater or less extent, of the fibers forming the capsule of this joint; that he was advised by Dr. Benesh that the reduction of the dislocation was accomplished very readily, which indicated that in the original dislocation there was a decided stretching and tearing of this capsule; that, once there is a dislocation, redislocation can easily occur from chewing, yawning, or laughing; and that it is not surprising, considering the original injury, that some such simple actions have, or may have, precipitated a redislocation of the jaw.

On the basis of this showing, we are of the opinion that the court was justified, in the exercise of its sound discretion, in vacating its prior order of approval. Once a settlement is approved, the court should be cautious in vacating its order of approval. Its discretion cannot be exercised arbitrarily or without cause. But where, as here, there was adequate basis for the exercise of the court's discretion, we should not interfere.

Defendants claim that the issue of plaintiff's contributory negligence should have been submitted to the jury. Plaintiff was 16 years of age and a passenger in his father's automobile driven by one Lusk. He was seated in the right front seat of the vehicle. The auto was traveling east on Sixty-sixth street approaching Lyndale, and defendant's car was being operated north on Lyndale approaching Sixty-sixth. The car in which plaintiff was riding stopped for the arterial sign as it approached Lyndale avenue, and plaintiff looked both north and south. As he looked to the south on Lyndale, he could see a distance of 500 or 600 feet, but observed no vehicle approaching. His last observation was made just before the automobile was put into gear as it started to cross the intersection. The car traveled across Lyndale at five to ten miles per hour and was struck when it had almost completely crossed Lyndale and was partially on the gravel portion of the highway to the east of the pavement. Plaintiff at no time saw defendant's automobile approaching.

Where there is evidence, either direct or by inference, upon which reasonable minds can disagree as to whether a passenger is guilty of contributory negligence, it is a fact question for the jury. Hubenette v. Ostby, 213 Minn. 349, 6 N. W. (2d) 637. We think this case is controlled, however, by Jacobsen v. Ahasay, 188 Minn. 179, 181, 246 N. W. 670, 671, where we said:

"* * * We cannot see what they [passengers] could have done by way of protest or otherwise in regard to the passage of the stop sign or the entry into the intersection which would have changed the conduct of the driver or have prevented the accident."

That language fits the situation here. It is our opinion that it would have been error to submit the issue of plaintiff's contributory negligence to the jury. *Cf.* Garland v. Nelson, 219 Minn. 1, 17 N. W. (2d) 28.

■ Although defendants do not claim as error the insufficiency of the evidence to sustain the verdict, they assert that there were numerous errors in the court's charge requiring a new trial. After carefully reading the record, we have reached the conclusion that the evidence so overwhelmingly preponderates in plaintiff's favor on the issue of defendant's negligence that the court would have been justified in directing a verdict for plaintiff. Reiter v. Porter, 216 Minn. 479, 13 N. W. (2d) 372; Brulla v. Cassady, 206 Minn. 398, 289 N. W. 404. A new trial should not be granted in a civil case, however erroneous the charge may have been, if the verdict was supported by so manifest a preponderance of evidence that it would have been the obvious duty of the court to set aside a contrary verdict as not justified by the evidence, or was such as the court would have been justified in directing. 5 Dunnell, Dig. & Supp. § 7170.

The accident happened on a clear day between 2:00 and 2:30 p. m. The visibility was good and the pavement dry. Sixty-sixth street runs east and west and is a tarvia-surfaced road. Lyndale, a paved highway, runs north and south. The driver of the Wilson car stopped for the arterial sign as he approached Lyndale about 15 or 20 feet from the Lyndale pavement. He could clearly see to the south from 400 to 500 feet, and there were no automobiles within that area when he stopped his car for the sign. He proceeded across Lyndale in low gear at a speed of from five to ten miles an hour, and his automobile was struck by the vehicle driven by the defendant Fosse when the Wilson car had almost completely crossed Lyndale avenue. At no time did plaintiff see defendant's car prior to the collision. Four disinterested witnesses testified that defendant was driving his automobile at speeds estimated variously from 35 to 50 miles per hour just prior to the collision. Lyndale avenue to the south of Sixty-sixth for at least 150 feet is zoned for 30-mile

speed. The sole witness for defendants on the issue of negligence was Fosse, the driver of the car. He does not dispute the fact that the Wilson car stopped for the arterial sign and was being operated slowly across Lyndale avenue. He concedes also that it was struck when it had almost completely crossed Lyndale. Fosse estimated his speed at about 30 miles an hour at a point 60 feet from the intersection. This was an admission that he had been exceeding the 30-mile an hour limitation, for he testified that he was traveling 40 miles an hour just as he observed the 30-mile an hour sign and that he slowed down his vehicle until it reached the point where he was 60 feet from the intersection, when he first observed the Wilson car, and that at that time he was down to about 30 miles an hour. He then claims to have applied his brakes. Fosse attempts to justify his conduct by stating that there were several southbound automobiles on Lyndale which obscured his vision of the Wilson car until he reached a point 60 feet from the intersection. The disinterested witnesses testified that there were no such vehicles, and the overwhelming weight of the testimony disputes that claim of defendants. Even if the driver of the Wilson car was negligent, defendants would also be liable if their negligence proximately concurred in causing plaintiff's injuries.

We believe that the overwhelming weight of evidence indicates that defendant was negligent in driving his automobile at an excessive rate of speed and without maintaining a proper lookout, and that such negligence proximately concurred in causing plaintiff's injuries. Any errors there might have been in the court's charge, therefore, would not justify a new trial.

Affirmed.