# HANS L. GORDON v. PETER PAPPAS, SR., AND ANOTHER.[1]

October 22, 1948.

No. 34,639.

[1]Reported in 34 N. W. (2d) 293.

96

*Herbert E. Olson* and *Day, Lundberg & Stokes,* for appellants.
*Smith & Nolan* and *Oscar E. Lewis,* for respondent.

LORING, CHIEF JUSTICE.

This action was brought under the death-by-wrongful-act statute. It comes to the writer by reassignment.

On May 8, 1946, Robert U. Gordon, 21 years of age, plaintiff's decedent, accompanied the defendant Peter Pappas, Jr., another young man, from Shevlin to Bemidji, Minnesota, in the car of defendant Peter Pappas, Sr. They spent the late afternoon and evening in Bemidji and left for home around or after eleven o'clock. A considerable distance ahead of them on the highway, going west, were John Hall and his family in his Ford truck. John was driving. His two sons, aged six and seven, were in the front seat of the cab with him. His household effects were in the body of the truck, and his wife and two younger children were resting in the rear of the truck. When Hall was about half a mile east of Solway, he felt that his right rear tires had gone flat, so he pulled partly off the paved part of the highway on the right-hand shoulder, leaving the left wheels of his truck on the pavement and the right ones on the shoulder. In this position he stopped and got out to ascertain the

extent of his trouble with the right rear tires, both of which he found to be flat. His front lights were on, and so were the rear clearance lights and taillight of his truck. The night was clear; stars were shining. The concrete pavement was 20 feet wide. The road was straight for half a mile to the east. It was dry. Hall went to the front of his truck to determine if the shoulder was wide and firm enough to accommodate his truck. While he was so engaged, a car passed going west. Then the Pappas car approached from the east and collided with the left rear corner of the truck. The lights on the Pappas car were in good order, and, therefore, on a clear night would reveal an object at least 350 feet ahead of it. When it collided with the left rear corner of the Hall truck, the Pappas car was thrown into an irregular course across the pavement, went into the ditch and out again, and finally stopped, facing toward the northeast, about 150 to 175 feet ahead of the Hall truck.

Robert Gordon was thrown out and so severely injured that he died about four o'clock the next morning. The record indicates that he was unconscious when found lying upon the highway and that he did not regain consciousness before death. The jury returned a verdict of $8,500 in favor of plaintiff. Defendants moved for judgment notwithstanding the verdict or for a new trial, both of which motions were denied. Defendants appeal from the judgment.

■ The first contention of defendants is that the court erred in not submitting to the jury the question of whether or not Robert was guilty of contributory negligence. The evidence as to what Robert was doing immediately prior to the collision is a statement by Peter, Jr., to plaintiff on the day following the collision that Robert was sleeping at the time of the collision. On the trial, Peter, Jr., claimed his constitutional privilege and refused to testify as to the circumstances of the collision on the ground that his testimony might tend to incriminate him. That leaves us without any evidence about Robert's conduct immediately prior to the collision, except that he was asleep. There is no evidence whatever that Robert was aware of the hazard presented by the presence of the Hall truck partly upon the pavement, nor that he was aware that Peter, Jr., was

not cognizant of the hazard. As a guest passenger, under the circumstances disclosed by the record, he might, in the exercise of ordinary care, go to sleep if he felt disposed to. Under those conditions and the presumption of care which follows as to a deceased person in the absence of evidence, there was no question to be submitted to the jury on Robert's contributory negligence. Wicker v. North States Const. Co. Inc. 183 Minn. 79, 235 N. W. 630; Hartel v. Warren, 196 Minn. 465, 265 N. W. 282; Lang v. C. & N. W. Ry. Co. 208 Minn. 487, 295 N. W. 57; Vukos v. Duluth St. Ry. Co. 173 Minn. 237, 217 N. W. 125; Kordiak v. Holmgren, 225 Minn. 134, 30 N. W. (2d) 16; Wilson v. Davidson, 219 Minn. 42, 17 N. W. (2d) 31.

■ Defendants also claim that the evidence of negligence on the part of Peter, Jr., was insufficient to submit to the jury or to sustain any verdict which could be found by them. On the contrary, as we view the evidence, it was conclusive of negligence on the part of Peter, Jr. The night was clear; his lights were good; and the lights on the truck were burning. The truck was only partly upon the pavement. No other cars were in the vicinity to interfere with the maneuvering of the Pappas car. The road was straight for at least half a mile, and the pavement was 20 feet wide, affording plenty of room to maneuver. A car had passed the truck going west shortly before the collision. Had Peter, Jr., been exercising ordinary care in observing the road, a very slight turn of the wheel would have avoided the collision regardless of the speed at which he may have been driving. We think the evidence of his negligence is compelling and that reasonable minds, functioning judicially, could not differ as to that.

The standard of care required by law to be exercised to excuse one from a charge of contributory negligence is generally the same as that required to excuse one from a charge of negligence—ordinary prudence. Erd v. City of St. Paul, 22 Minn. 443, 446. "Want of ordinary care is the test of contributory negligence as of negligence." Roach v. Roth, 156 Minn. 107, 111, 194 N. W. 322, 324.

In the case of Orrvar v. Morgan, 189 Minn. 306, 249 N. W. 42, after a full consideration of our cases on the subject, we held under

similar, but less conclusive, circumstances that, where the driver of a car collided with a parked truck, the driver was guilty of con- tributory negligence as a matter of law. No opinion of this court has overruled Orrvar v. Morgan, although other cases have been presented where it was necessary to distinguish the facts presented from those before us in that case.

Other courts have taken the same view of the compelling force of facts similar to those presented in the Orrvar case and of the facts now before us. In Bagan v. Bitterman, 65 N. D. 423, 427, 259 N. W. 266, 267, where the plaintiff, the driver of a passenger car which at night collided with a truck parked partly upon the traveled portion of the highway, sought recovery from the owner of the truck, the court said:

"Assuming the evidence shows Fritz Bitterman guilty of negli- gence, plaintiff cannot recover because of his own contributory negligence. He stated his lights were in good shape, and lighted the road for a distance of 200 feet. He was traveling at a rate not to exceed 25 miles per hour. He was keeping a lookout and yet he did not see the truck until he was upon it. Others testified they saw the truck for about 100 feet ahead. Either he was driving at an ex- cessive rate of speed, or was not driving carefully, or his lights were poor or he was not keeping a lookout. There was no object to obscure his vision. He said his car was in good condition and his brakes were working. The physical facts are such that it is clear he was guilty of contributory negligence."

The court cited Billingsley v. McCormick Transfer Co. 58 N. D. 913, 920, 228 N. W. 424, 427, a similar case, where the court had said:

"* * * The physical facts are such that no conclusion can be reached but that of carelessness, heedlessness and negligence of the driver of plaintiff's car; that this was the real cause of the accident or so contributed to it that without it no collision could have oc- curred."

Other cases in point are Grutski v. Kline, 352 Pa. 401, 43 A. (2d) 142; Stone v. Mullen, 257 Mass. 344, 153 N. E. 565; Allen v. Dr.·

Pepper Bottling Co. Inc. 223 N. C. 118, 25 S. E. (2d) 388; Forster v. Outagamie Equity Co-op. Exchange, 197 Wis. 63, 221 N. W. 376. It follows that Peter, Jr., was negligent as a matter of law. There was not a single circumstance that would modify the rule.

■ While we are not in accord with the view that the charge relative to speed was before this court for review, we do not labor the point, for the reason that the rule is well established in this state that if the verdict is right as a matter of law there will be no reversal on the ground of erroneous instructions nor on the ground of erroneous rulings if those rulings do not affect the correctness of the verdict. This has been the rule since the case of Colter v. Mann, 18 Minn. 79 (96), and has been followed in too many cases to justify citation of them all. Among them are Gendreau v. North American L. & C. Co. 158 Minn. 259, 197 N. W. 257; Commercial Union Ins. Co. Ltd. v. Connolly, 183 Minn. 1, 235 N. W. 634; Wilson v. Davidson, 219 Minn. 42, 54, 17 N. W. (2d) 31, 37; DeVere v. Parten, 222 Minn. 211, 214, 23 N. W. (2d) 584, 586, where this court held:

"* * * Where the verdict is the only one warranted under the law and by the evidence, error in the charge and misconduct on the part of counsel for the prevailing party in his closing argument are harmless and no grounds for a new trial."

Therefore, the only question left open for consideration in this case is whether the verdict is so excessive as to demonstrate that it was the result of passion or prejudice. We do not so regard it.

■ The contention that the verdict is so excessive as to demonstrate that it was the result of passion and prejudice, under the rule of Mohr v. Williams, 95 Minn. 261, 266, 104 N. W. 12, 13, 1 L.R.A.(N.S.) 439, 111 A. S. R. 462, 5 Ann. Cas. 303, is not supported by the record.

Robert's father and mother were respectively 67 and 64 years of age. They had an expectancy of from 10 years (for the father) to 11.67 years (for the mother). Robert was a young man in good health, and the undisputed evidence tends to prove that he had a deep sense of obligation toward his parents and a disposition to con-

tribute to their support, they being in straitened circumstances. This court, in the year 1936, in Hartel v. Warren, 196 Minn. 465, 265 N. W. 282, sustained a verdict of $6,000 for the death of a 19-year-old daughter, a time when the purchasing power of the dollar was considerably higher than it was in 1946. In Ekdahl v. Minnesota Utilities Co. 203 Minn. 374, 281 N. W. 517, this court, in 1938, upheld a verdict in the sum of $6,250 for the death of a 15-year-old boy. In Turenne v. Smith, 215 Minn. 64, 9 N. W. (2d) 409, a verdict of $7,628 was sustained for the death of a boy 14 years of age. Robert was 21, capable of earning substantial pay, which he was disposed to share with his parents. In the light of the reduced purchasing power of the dollar, we cannot say that $8,500 is an excessive verdict in this case.

■ The contention is also made in the sixth assignment of error that the court erred in denying defendants the right, on cross-examination of Robert's mother, to inquire whether Robert had allowed his government life insurance to lapse upon leaving the navy. This was ruled out as not proper cross-examination because she had not testified with reference to it in her examination in chief. There is no showing whatever that the ruling was erroneous, nor was there an offer to call the mother for cross-examination as a party interested in the event of the action. Other assignments require no comment.

Judgment affirmed.

PETERSON, JUSTICE (dissenting).

I am unable to assent to the views of the majority.

■ The verdict was not right as a matter of law. The evidence presented a fact question as to whether Pappas, Jr., was negligent. Likewise, it was a fact question whether the collision was caused solely by Hall's negligence, consisting of his violations of M. S. A. 169.50 in parking his autotruck at night on the pavement without a lighted "rear lamp" plainly visible from a distance 500 feet to the rear, and of § 169.75 in so parking his autotruck without "immediately" setting out flares 100 feet to the rear, 100 feet in advance, and one on the "roadway" side thereof. It was for the trier of fact, and not for this court on appeal, to determine these questions.

The so-called taillight was not on the back or hindmost part of the autotruck, where it should have been, but 5½ feet forward from the rear thereof and about 6 or 8 inches under the body. The body was 11 feet long. Hence the light was placed midway between the front and rear thereof. There was no evidence that the taillight was visible 500 feet down the road to the rear of the autotruck. The evidence permitted an inference that it was not so visible. The autotruck stood diagonally on the pavement with the right front part thereof at least a couple of feet farther from the pavement than the rear. The consequence was that a motorist approaching from the rear did not have a view of the autotruck from the rear, but from an angle. The witnesses who gathered after the accident and viewed the autotruck from behind it saw the taillight lit, but one of them whose place of view was not disclosed did not see the taillight at all. Pappas, Jr., was driving a Plymouth sedan. He sat higher than the so-called taillight. The projection of the body of the autotruck behind the taillight for a distance of 5½ feet might have and probably did cut off his view. Furthermore, the frame on the right side of the projected body also might have done that very thing and probably did. Undoubtedly, when a motorist approaching from the rear got close to the standing autotruck he could see the taillight. The evidence here shows that Pappas, Jr., evidently did so when he turned to the left to avoid the standing autotruck and hit "the extreme left corner of the rear" thereof.

If it be assumed that Pappas, Jr., saw the taillight at a sufficient distance to avoid a collision with the standing autotruck, the evidence permits an inference that the positions of the taillight and "clearance" lights might have misled him as to the exact position of the autotruck. The rearmost clearance lights were located, as was the taillight, 5½ feet forward from the rear end of the autotruck, or midway between the front and rear of the autotruck. Thus, there was a circle of lights 5½ feet forward from the projecting rear left corner. It is undisputed that the Pappas car hit the extreme left rear corner; hence it is clear that, if the rear of the autotruck was where the circle of lights might have misled him to believe it

was, Pappas would have cleared the autotruck by at least several feet. In that view of the evidence, the rule of Orrvar v. Morgan, 189 Minn. 306, 249 N. W. 42, has no application. Where the circumstances are such as to mislead the driver of the colliding vehicle, obscure his view, or distract him, we have held that the cited case has no application and that the question whether the driver of the colliding vehicle was negligent is one of fact. Johnson v. Kutches, 205 Minn. 383, 386, 285 N. W. 881, 882; Twa v. Northland Greyhound Lines, Inc. 201 Minn. 234, 275 N. W. 846; Tully v. Flour City Coal & Oil Co. 191 Minn. 84, 253 N. W. 22. So it was here.

It was Hall's plain duty to set out flares "immediately." § 169.75; Brown v. Murphy T. & S. Co. 190 Minn. 81, 251 N. W. 5. The statute requiring flares to be set out proceeds upon the assumption that a truck standing on a pavement at night with its lights lit is not a sufficient warning to other travelers of the danger its presence creates; that other and additional warning to protect them is necessary; and that putting out flares is necessary to afford such protection. By clear implication, the doctrine of Orrvar v. Morgan, *supra,* is abrogated by the statute. We have so held, without expressly so stating, in numerous cases holding that failure to set out flares in violation of statute to warn of the presence of a truck standing on a pavement in itself constitutes actionable negligence, even though the truck's lights, front or tail, are lit. Duff v. Bemidji Motor Service Co. 210 Minn. 456, 299 N. W. 196; Twa v. Northland Greyhound Lines, Inc. 201 Minn. 234, 275 N. W. 846; Johnson v. Sunshine Creamery Co. 200 Minn. 428, 274 N. W. 404. In the Duff case we said (210 Minn. 458, 299 N. W. 197):

"The failure of defendant's chauffeur to use his flares as required by statute * * * is enough without more to sustain the jury finding of negligence chargeable to defendant."

In the Twa case, holding that Orrvar v. Morgan was not applicable in a case like this, we said (201 Minn. 239, 275 N. W. 848):

"* * * To hold that a motorist is under an imperative duty to discover at his peril and at all events every substantial obstruction

to travel within the range of illumination of his headlights would constitute an avoidance of the penalties of the highway traffic act imposed on those who violate its provisions."

· Here, after discovering that he could not proceed without changing a tire, Hall stopped his autotruck partly on the pavement and partly on the shoulder. Instead of setting out flares "immediately" as the statute required, he went ahead to reconnoiter to determine whether it was safe to get entirely onto the shoulder. This constituted a violation of the statute and created the dangerous condition which ultimately caused the accident in question. See, Brown v. Murphy T. & S. Co. 190 Minn. 81, 251 N. W. 5, *supra.*

Thus, the question whether Pappas, Jr., was negligent was in any view of the evidence a fact question.

■ The vice of the result reached below and affirmed here is that the court's instructions not only permitted the jury to find Pappas, Jr., negligent upon several grounds, permissible under the evidence, that he failed to exercise due care under the circumstances, but also upon the ground, unpermissible under the evidence, that the jury might under the statutes (§§ 169.14, subd. 2[3], and 169.96) presume negligence if Pappas, Jr., drove at a speed in excess of 50 miles per hour. There was no direct evidence as to his speed. For lack thereof, reliance is placed upon circumstances consisting of physical facts, such as the facts that the Pappas car tore loose a plank on the Hall autotruck; that it proceeded into the ditch and back onto the pavement; that it turned over, and that it came to rest upright about 150 to 175 feet ahead of the autotruck. Physical facts of an automobile accident may be evidence of negligence, but they are not evidence of any particular rate of speed of the vehicles involved in the accident. The law attaches no certain conclusion to them. Beckman v. Schroeder, 224 Minn. 370, 28 N. W. (2d) 629; Romann v. Bender, 190 Minn. 419, 252 N. W. 80; 10 Blashfield, Cyc. of Auto. Law and Practice (Perm. ed.) § 6560. See, Grengs v. Erickson, 225 Minn. 153, 29 N. W. (2d) 881; Caulfield v. McGivern, 196 Minn. 339, 265 N. W. 24. Hence, it follows that there was no basis here for an inference of negligence based on speed in excess of 50 miles per hour. For

reasons to be presently stated, giving the instruction permitting the jury to base a finding of negligence on such an inference constituted reversible error.

■ An instruction being not only an exposition of the principles of law to be applied to the facts by the jury in rendering a verdict so as to determine the rights of the parties according to the law and the facts, but also a decision by the trial judge that the principles of law stated in the instruction shall be so applied, it is elementary that the parties are entitled, as a matter of fundamental right, to have controlling propositions of law correctly stated in the instructions. Hubred v. Wagner, 217 Minn. 129, 14 N. W. (2d) 115; Moll v. Bester, 177 Minn. 420, 225 N. W. 393; 6 Dunnell, Dig. & Supp. § 9798. An instruction that a jury may base its verdict upon certain facts amounts to a declaration of law that the jury may find those facts to exist. Accordingly, it is error to submit to the jury as a basis for recovery a ground for which there is no evidentiary support. Where the instructions submit several grounds as bases for recovery, for some of which there is evidentiary support and for one or more of which there is none, it is none the less error, and, if the verdict is for plaintiff, it must be set aside, unless he is entitled as a matter of law to recover upon some ground other than the one erroneously submitted. Ohrmann v. C. & N. W. Ry. Co. 223 Minn. 580, 27 N. W. (2d) 806 (speed of train) ; Weber v. McCarthy, 214 Minn. 76, 7 N. W. (2d) 681 (speed of automobile) ; 5 Dunnell, Dig. & Supp. § 7174. There is no way of ascertaining upon which ground a jury based its verdict, and, because that is true, the verdict in a case such as this might be based upon a ground on which the defendant is not legally liable. Ohrmann v. C. & N. W. Ry. Co. supra. See, McManus v. Nichols-Chisholm Lbr. Co. 105 Minn. 144, 117 N. W. 223 (evidence considered by jury).

Here, the jury might have found for defendants as to all grounds of negligence claimed by plaintiff except the one of statutory presumption of negligence based on speed in excess of 50 miles per hour. If the jury so found, the verdict as a matter of law should have been for defendants, for the plain reason that the finding entitled defend-

ants to exoneration from liability upon the only grounds upon which it might have been based. A verdict for plaintiff based on an inference of negligence from speed in excess of 50 miles per hour would have been contrary to the evidence and unauthorized by law. Since there is no way of ascertaining whether the verdict was based upon such excessive speed or some other ground or grounds and since plaintiff was not entitled as a matter of law to recover upon any ground of negligence charged, the verdict should be set aside under the rule.

MR. JUSTICE KNUTSON, not having been a member of the court at the time of the argument, took no part in the consideration or decision of this case.

---

[1]Reported in 34 N. W. (2d) 290.