EVALYN BRAZINGTON v. HALE PLANKERTON.

82 N. W. (2d) 620.

April 26, 1957—No. 37,027.

*Meagher, Geer, Markham & Anderson, David W. Nord,* and *O. C. Adamson II,* for appellant.

*Cragg & Barnett* and *Robert W. Barnett,* for respondent.

THOMAS GALLAGHER, JUSTICE.

The jury returned a verdict of $13,500 in favor of plaintiff, a pedestrian, for injuries suffered when she was struck and knocked down by a car driven by defendant as she crossed Harmon Place from south to north on the west crosswalk at the intersection of Spruce Place and Harmon Place in Minneapolis. This is an appeal from an order denying defendant's motion for judgment notwithstanding the verdict or a new trial.

On appeal, defendant contends (1) that the evidence establishes, as a matter of law, that plaintiff's contributory negligence proximately caused the accident; and (2) that the trial court erred in failing to instruct the jury that plaintiff's conduct amounted to an unjustified violation of M. S. A. 169.21, subd. 2, and, as a matter of law, constituted negligence proximately causing the accident. Section 169.21, subd. 2, provides in part:

"Where traffic-control signals are not in place or in operation the driver of a vehicle shall yield the right of way * * * to a pedestrian crossing * * * within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger, but no pedestrian shall suddenly leave a *curb or other place of safety* and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield." (Italics supplied.)

The evidence viewed in the light most favorable to plaintiff indicates the following: The accident happened about 6:45 p. m. on February 23, 1954, at the intersection of Harmon Place and Spruce Place in Minneapolis. The former is 56 feet in width and extends

easterly and westerly, and the latter is 32 feet in width and extends in a northerly and southerly direction at this intersection. The streets were dry and the street lights were on. Plaintiff, 48 years of age at the time, standing on the southwest corner of this intersection just prior to the accident, awaited an opportunity to cross Harmon Place. As she waited, two cars passed in front of her from her left. She then looked to her right and saw the lights of defendant's car approaching one block away. Thereupon, she stepped from the curb and proceeded to make her crossing. After walking a few paces from the curb, she again looked to her right and saw defendant's car about halfway down the block. At about the center of Harmon Place, she glanced to her right and saw defendant's car near her. She was unable to estimate its exact distance from her at that time. After hesitating slightly, she proceeded on for about 10 more steps when she was struck by the right side of defendant's car.

Defendant testified that he did not observe plaintiff until he was approximately 30 feet east of the intersection; that at that time his speed was approximately 20 miles per hour; that just prior to entering the intersection he looked again and saw that plaintiff was possibly slightly over and to the north of the center line of Harmon Place; that he was then traveling in his left lane with his left wheels two or three feet from the center line; that at this point plaintiff paused momentarily, looked toward his car, and proceeded to cross in front of it; that he applied his brakes lightly but did not sound his horn; that he did not apply his brakes vigorously until his car was a few feet from plaintiff; that his right front fender struck plaintiff; that had she been one foot more to the north his car would have missed striking her; and that the impact knocked her to the street to the right of the lane in which he was traveling.

David Spartz, a witness called by plaintiff, testified that just prior to the accident he had been following defendant with his car; that both cars were traveling westerly in their left traffic lane with their left wheels near the center line of Harmon Place; that he had observed plaintiff walking across Harmon Place until she passed in front of and was obscured by defendant's car; that the next time

he observed her she was falling away from the right side of defendant's car after being struck by it; and that he did not observe defendant's car change its course in any way prior to striking plaintiff.

Defendant urges that the court erred in refusing to direct a verdict in his favor on the ground that plaintiff's testimony that she had continued forward from the center line of Harmon Place after she had hesitated there and observed defendant's approaching car established that she was negligent and that her negligence proximately caused the accident as a matter of law. The trial court submitted the issue of negligence and contributory negligence to the jury. Included in its instructions was the statement that:

"* * * If * * * he [defendant] did violate this statute [§ 169.21, subd. 2], * * * he would be prima facie guilty of negligence. * * * and it would be question for you to determine whether or not the negligence * * * was a direct or proximate cause of the accident.

\* \* \* \* \*

"* * * plaintiff was required to exercise due or ordinary care for her own safety. She was required to exercise that degree of care which a person of ordinary prudence would have exercised under the same or similar circumstances. And if she failed to exercise that degree of care, and her negligence contributed in any degree to this accident * * * as a direct or proximate cause * * * she could not recover * * *."

■ We are of the opinion that the trial court did not err in refusing to instruct the jury that plaintiff was guilty of contributory negligence as a matter of law. The jury might well conclude that plaintiff had passed the center line of Harmon Place and was directly in the path of defendant's car at the moment she paused and that thereafter before she was struck she had proceeded about 10 steps from the center of the intersection, clearly indicating that, had defendant complied with § 169.21, subd. 2, and yielded the right-of-way to her as required therein, there would have been no accident. Because of defendant's failure in this respect, plaintiff was forced

to decide whether to remain stationary in the path of defendant's oncoming car; to step backwards not knowing whether or not she might be stepping into the path of a car approaching from the opposite direction; or to proceed forward beyond defendant's car. Certainly her decision to move forward under such circumstances could not be held negligence as a matter of law, particularly since she was entitled to rely upon defendant's obligation to yield the right-of-way to pedestrians at this crossing. It is only where the evidence is so conclusive as to leave no room for differences of opinion that the issue of contributory negligence ceases to be one of fact. Kelley v. Chicago, B. & Q. R. Co. 142 Minn. 44, 170 N. W. 886; Wilson v. Davidson, 219 Minn. 42, 17 N. W. (2d) 31. Clearly, that is not the situation here.

■ There was no occasion for instructing the jury that plaintiff was guilty of violating § 169.21, subd. 2, in suddenly leaving a "curb or other place of safety" into the path of a closely approaching vehicle. The evidence above could establish that the left wheels of defendant's car were close to the center line of Harmon Place at the moment plaintiff hesitated just beyond such center line. At this instant, rather than being in a place of safety as defendant contends, the jury could find that plaintiff was directly in the path of defendant's car. Thereafter, she walked forward an additional 10 steps. In the time required to do this, defendant could have traveled a substantial distance from east of the intersection so that it is not conclusive by any means that plaintiff suddenly stepped into the path of his car. Further, the reference in § 169.21, subd. 2, to "other place of safety" obviously was intended to relate to *safety zones* or *safety islands* when they have been provided for pedestrians on heavily traveled streets or highways in the interests of safety. The term can scarcely be held to have been intended to cover any spot or place on a highway, and particularly at unmarked intersections or crosswalks, where a pedestrian may have paused to momentarily observe approaching traffic. Such a construction would in effect nullify

totally statutes relating to pedestrian right-of-way at such intersections and crosswalks.

The order appealed from is affirmed.

Affirmed.