## TERRESA KACHMAN, A MINOR, BY MICHAEL KACHMAN, FATHER AND NATURAL GUARDIAN, v. PETER A. BLOSBERG.

87 N. W. (2d) 687.

January 3, 1958—Nos. 37,047, 37,197.

*Ralph T. Lilly, F. P. Bradford, Thomas, Bradford, King & Collatz,* and *Donald F. Pratt,* for appellant.

*Robins, Davis & Lyons, Harding A. Orren,* and *Roderick B. Mc-Larnan,* for respondent.

NELSON, JUSTICE.

Terresa Kachman, a minor, was struck and injured by an automobile driven by defendant, Peter A. Blosberg, on the morning of May 22, 1954. The accident occurred at about 9:30 a. m. at a point on Highway No. 169 approximately 6 miles south of Garrison, Minnesota, to the west of Whitefish Bay, also known as Wigwam Point, on Lake Mille Lacs. An action was commenced by the minor, through Michael Kachman her father and natural guardian, to recover for her injuries. Upon trial of the action the jury found for the plaintiff, assessing damages in the amount of $12,500. Defendant moved the court for judgment notwithstanding the verdict or in the alternative for a new trial. The motion was denied and defendant appeals from the order and from the judgment entered.

If all conflicts in the evidence are resolved in favor of the prevailing party below, the facts appear to be as follows: Terresa's parents, Mr. and Mrs. Michael Kachman, left Minneapolis by automobile about 6:30 a. m. on the day of the accident bound for Lake Ann in northern Minnesota to visit a relative. They took with them their four children—the youngest boy, an infant in arms; Terresa,

age 5; her older sister, Jacqueline, age 7; her older brother, Michael Dennis, age 11—and a friend Jerry Guptill, age 12. Mr. Kachman stopped on the way to visit a friend whose cabin was located on the west side of Highway No. 169 at a point approximately 20 feet north of the place where Terresa was injured.

Highway No. 169, as it extends northward in the area of the accident, makes a long sweeping curve to the right and the driver of an automobile can see for a considerable distance in either direction. The highway is of standard blacktop, 22 feet in width, with a 6-foot gravel shoulder on the east or lake shore side. The distance from the east edge to the lake shore line varies from 25 to 75 feet. There is a little bank from the beach leading up to the road level. On the lake side, in the immediate area, is a boat landing for rowboats; along the west side, north of where the accident occurred, there is a combination store-restaurant and gas station; approximately 300 feet to the north is a motel, and about 300 to 400 feet to the south are other cabins. There are no crosswalks at any point in the area. People frequently cross from the cabins on the west side of the highway in going to the lakeshore for boating and fishing.

When the Kachmans reached the point opposite the friend's house where they had planned to visit, Mr. Kachman turned his car to the left across the highway and parked it in his friend's driveway on the opposite side from the lakeshore. While Mrs. Kachman remained in the automobile with Terresa's baby brother and Mr. Kachman was visiting with his friend in the cabin, Terresa, Jacqueline, Michael Dennis, and their friend crossed the highway to the lakeshore where they spent about 15 minutes throwing and skipping rocks over the water. After spending a short time on the lakeshore, they went up onto the east side of the roadway. One of the four crossed over safely. Terresa next proceeded to cross over to the west side and in the process of crossing was struck by defendant's car.

The defendant and his wife left Minneapolis by automobile about 7:00 a. m. on May 22, 1954, to go to their cabin on Lake Roosevelt located approximately 50 miles north of the Whitefish Bay area. Just before the accident occurred defendant was driving his 1950 four-door Chevrolet sedan in a northerly direction in the east lane of

Highway No. 169. A two-wheel trailer had been hooked to the Blosberg car, which had been loaded with a couch and ten streetcar window frames which he expected to put in his cabin. The glass for these frames was stacked and braced in the rear-seat area, where the cushion had been removed.

It appears that defendant first saw the children when about 300 feet south of the accident scene. The speed zone in the area was 60 miles per hour. Defendant was traveling 50 to 60 miles per hour. The morning was partly cloudy but the highway was dry. When he saw the children nearing the highway he took his foot off the accelerator without applying his brakes, letting the car coast. When 60 to 70 feet south of Terresa, who had then entered the highway from the east, he was traveling 45 to 47 miles per hour. He then applied his brakes for the first time. He testified that when he hit Terresa he was going about 7 miles per hour and that he stopped within 4 feet after striking her. The defendant's car left skid marks 62 feet long in the center of the east lane. Defendant testified that about the time Terresa was in the act of crossing the highway another car was approaching from the north in the west lane. There is testimony in the record, however, from which the jury could have found that the west lane was clear of cars when the accident occurred.

The trial court submitted the issues of defendant's negligence and plaintiff's contributory negligence to the jury for determination, accompanied by the usual instructions. The following questions raised by defendant will be considered and determined: (1) Did the portion of the first paragraph of M. S. A. 169.21, subd. 2, which reads "but no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield" apply to a pedestrian crossing a country highway where there are no crosswalks or intersections; (2) was the plaintiff negligent as a matter of law in not yielding the right-of-way to the defendant where no justification for her being on the road was shown; and (3) did the emergency rule as applied to automobile negligence cases become applicable in this case.

Defendant contends that the trial court committed error in not instructing the jury in the wording of that portion of § 169.21, subd.

2, referred to in the foregoing paragraph. The defendant requested the court below to instruct the jury relative to the application of § 169.21, subd. 3. The request was granted, and the court in response thereto charged the jury as follows:

"There are a few sections of the Highway Traffic Law that I would like to read to the jury. *'Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway.'*

"Now, there was a statement by one of the witnesses here, Mr. Grabow, quoting from an accident report or some notes that he made that this crossing was at a point where crossing was prohibited. I think it is only fair to say that there is no prohibition as a matter of law to crossing at this particular point involved here.

" 'Notwithstanding the provisions of this section every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway *and give warning by sounding the horn when necessary and exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway.'* " (Italics supplied.)

The court also instructed the jury as follows on the provisions of the traffic act pertaining to speed:

"There are some provisions here in the Traffic Act pertaining to speed of an automobile. 'No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so restricted as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care. Where no special hazard exists the following speeds shall be lawful, but any speeds in excess of such limits shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful;' and the speed limit that the parties had in mind here was 60 miles per hour during the daytime out in the open road.

"There is no evidence here claimed by either side that there is any speed here in excess of that figure.

" 'When reduced speed is required. The driver of any vehicle shall, consistent with the requirements, *drive at an appropriate reduced speed when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.*'

"The violation of one of these traffic regulations is only prima facie, not conclusive, evidence of negligence." (Italics supplied.)

The heading of § 169.21 reads: "PEDESTRIANS." Subd. 1 thereof is headed: "Obey traffic-control signals." Subd. 2 thereof is headed: "Rights—where no signals." It seems clear that the first paragraph of said subd. 2, in which the requested instruction appears, does not apply to the portion of a street or roadway lying between crosswalks or intersections but is intended to apply to a pedestrian crossing within a crosswalk. It provides when the driver of a vehicle shall yield the right-of-way to a pedestrian, where there are no traffic-control signals in place or in operation at a crosswalk and what the pedestrian shall not do when the vehicle is so close that it is impossible for the driver to yield.[1] The trial court ruled that the aforesaid section was intended to apply only to a pedestrian crossing a roadway within a crosswalk and did not apply to Highway No. 169 at the place here involved where there is no intersection or crosswalk, marked or unmarked.

No request was made that subd. 2 be given as a whole. It is well settled that a particular provision of a statute cannot be read out of context but must be taken together with other related provisions to determine its meaning. Kollodge v. F. and L. Appliances, Inc. 248 Minn. 357, 80 N. W. (2d) 62. We see no occasion under the circum-

---

[1]Section 169.21, subd. 2, provides in part:

"Where traffic-control signals are not in place or in operation the driver of a vehicle shall yield the right of way * * * to a pedestrian crossing * * * within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger, but no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield."

stances to instruct the jury that plaintiff was guilty of violating § 169.21, subd. 2, in suddenly leaving "a curb or other place of safety" into the path of a closely approaching vehicle. The reference in § 169.21, subd. 2, to another "place of safety" obviously was intended to relate to safety zones or safety islands when they have been provided for pedestrians on heavily traveled streets or highways in the interest of safety. The term can scarcely be held to have been intended to cover any and every spot or place upon a highway, and particularly any spot upon a highway or street at points other than crosswalks or intersections, nor even at unmarked intersections or crosswalks, where a pedestrian may choose momentarily to observe approaching traffic. See, Brazington v. Plankerton, 249 Minn. 459, 82 N. W. (2d) 620. We said in the Brazington case that placing such a construction on § 169.21, subd. 2, would in effect nullify totally statutes relating to pedestrians' right-of-way at such intersections and crosswalks. We reach the conclusion that the trial court properly instructed the jury on the rights and duties of pedestrians and drivers and, on the facts submitted in the instant case, correctly ruled that § 169.21, subd. 2, did not apply. Also, see, Pettit v. Lifson, 238 Minn. 349, 57 N. W. (2d) 34.

 Terresa Kachman was 5 years of age lacking three days at the time of the accident. Defendant argues that she was guilty of contributory negligence as a matter of law in failing to yield the right-of-way to him as required by § 169.21, subd. 3. The fact that Terresa may have violated the aforesaid section in going upon the highway as she did would hardly warrant a finding of contributory negligence as a matter of law. In Pettit v. Lifson, 238 Minn. 349, 354, 57 N. W. (2d) 34, 38, this court said:

"* * * we have repeatedly held that violation of the provisions of the highway traffic regulation act does not establish negligence as a matter of law. [Cases cited.] In particular, we have held that the presence of a pedestrian on a street at a point where it is his duty to yield to vehicular traffic does not establish his contributory negligence as a matter of law."

Terresa was only required to exercise that degree of care and vigilance which reasonably may be expected of one of her age and mental

capacity acting under similar circumstances. Deach v. St. Paul City Ry. Co. 215 Minn. 171, 9 N. W. (2d) 735; Carlson v. Sanitary Farm Dairies, Inc. 200 Minn. 177, 273 N. W. 665; Eckhardt v. Hanson, 196 Minn. 270, 264 N. W. 776, 107 A. L. R. 1; Peterson v. Miller, 182 Minn. 532, 235 N. W. 15.

The law in this state has for years made it clear that, where children are known or may reasonably be expected to be in the vicinity, a high degree of vigilance is required by the driver of a vehicle to measure up to the standard of what the law regards as ordinary care. The undisputed fact that Terresa was crossing the roadway at a point where no crosswalk intended for pedestrians was available did not absolve the defendant from his duty to exercise ordinary care. The fact that Terresa was on a part of the highway where it was the duty of pedestrians to yield the right-of-way to approaching automobiles did not make her guilty of contributory negligence as a matter of law. Particular facts and circumstances, conclusively shown, may make the negligence of the driver or the contributory negligence of the pedestrian, or both, questions of law for the court, but we find nothing in this record to make either issue a question of law and hold that both issues were questions of fact for the jury and that their findings thereon are sustained by the evidence. Saunders v. Yellow Cab Corp. 182 Minn. 62, 233 N. W. 599.

We find no basis in the record for finding that Terresa was guilty of contributory negligence as a matter of law for a violation of § 169.21, subd. 3. If in fact there was such a violation, it would at most constitute prima facie evidence of negligence only. § 169.96. The trial court did not err in refusing to instruct the jury that Terresa was guilty of contributory negligence as a matter of law. We have repeatedly said that it is only where the evidence is so conclusive as to leave no room for difference of opinion that the issue of contributory negligence ceases to be one of fact. Kelley v. Chicago, B. & Q. R. Co. 142 Minn. 44, 170 N. W. 886; Wilson v. Davidson, 219 Minn. 42, 17 N. W. (2d) 31. Clearly that is not the situation here. The rule is well settled in this state, as it is elsewhere, that a plaintiff may recover notwithstanding his contributory negligence if the defendant might, by the exercise of ordinary or reasonable care on his part,

after discovering the plaintiff in a position of danger, have avoided the accident. 13 Dunnell, Dig. (3 ed.) §§ 7017, 7036.

■ Defendant contends that he was suddenly confronted with an emergency through no fault of his own; that what did occur could not have been anticipated; and that the trial court therefore committed error in refusing to submit the sudden-emergency doctrine. He says he was in a tough spot, had to act quickly, and that because of this situation he was entitled to have the jury instructed on the emergency rule and its application in the terms approved by this court in Johnson v. Townsend, 195 Minn. 107, 261 N. W. 859. The trial court, in refusing to give the instruction, took the position that whatever sudden emergency the defendant faced was of his own making due to speed and his failure to keep a proper lookout and that the emergency could have been and should have been reasonably anticipated.

The question which the evidence presents in the instant case is not so much whether defendant chose the safest course to avoid the accident but whether, after the first discovery of the children on the edge of the highway, and a moment later Terresa crossing the highway and in a position of danger, he failed to exercise reasonable care commensurate with the circumstances to prevent injury to the child. His conduct is to be measured by the standard of reasonable care, the care required being that commensurate with the circumstances. This court has expressed the view (Carlson v. Sanitary Farm Dairies, Inc. *supra*) that, where children are known or may reasonably be expected to be in the vicinity, a degree of vigilance commensurate with the greater hazard created by their presence or probable presence is required of a driver to measure up to the standard of what the law regards as ordinary care. It is but a restatement of the rule that ordinary care is the exercise of a degree of care commensurate with the circumstances.

That an automobile driver can run down a child in plain sight of him without liability is not the law in this state. Mr. Justice Stone speaking for the court in Weasler v. Murphy Transfer & Storage Co. 167 Minn. 211, 213, 208 N. W. 657, 658, said:

"If there is one cause which, more than any other, should lead to the exercise of a high degree of care by an automobile driver, it is

the presence of children in such a situation that any combination of action on their part and his can result in injury to them."

One of the elements of the issue of defendant's negligence in this unfortunate accident is whether or not defendant was guilty of negligence in approaching so near to Terresa before applying his brakes that it was impossible for him to control his car and avoid a collision. He had seen the children ahead of him, on the edge of the highway, for a distance of at least 300 feet. He must have observed that they were children. It was a fact question whether or not under the circumstances defendant was guilty of negligence in failing to keep a proper lookout and to have his car under sufficient control to avoid a collision which he could foresee the movement of the children might precipitate. The presence of Terresa upon the highway called for greater caution from defendant than if she had been an adult. Any careful driver will always regard the presence of a child in the street as a warning. The impulsiveness of childhood and youth is known to everyone; that they may be moved by sudden change of mind or act pursuant to a peculiar design wholly unexpected by others should be familiar to every driver of an automobile. As was said in Olesen v. Noren, 161 Minn. 113, 115, 201 N. W. 296:

"* * * They are innocent, sometimes bent on innocent mischief, free from care, and at times unconscious of impending dangers. These peculiarities of childhood are common and if unappreciated by automobile drivers, who use our streets, they will be duly appreciated by the persons who sit in the jury box."

The jury could well find that the defendant was negligent in not sooner anticipating the peril which Terresa faced in crossing the highway. Highway No. 169 is a public highway and Terresa had a right to be upon it and was not a trespasser. She was not thereby committing an unlawful act, though she may have been prima facie negligent in doing so. The relative rights of pedestrians and vehicles on a public highway are equal and reciprocal. 13 Dunnell, Dig. (3 ed.) § 6980; Forseth v. Duluth-Superior Transit Co. 202 Minn. 447, 278 N. W. 904.

The possessor of the right-of-way (the privilege of the immediate

use of the highway) is not thereby absolved from the duty of exercising due care for his own safety, as well as for the safety of others. We therefore apply the rule that a pedestrian is not necessarily negligent in crossing the street or roadway at a place other than a regular intersection; but in so doing he must exercise due care for his own safety and yield the right-of-way to automobiles or other vehicles approaching him on the street or the highway. The Highway Traffic Regulation Act controls in determining the right-of-way between the pedestrian and the automobile driver. LeVasseur v. Minneapolis St. Ry. Co. 221 Minn. 205, 21 N. W. (2d) 522.

Two eyewitnesses to the accident, James R. Green and his brother Russell R. Green, were traveling northerly on Highway No. 169 the same morning. James was driving his Oldsmobile and Russell was sitting beside him as a passenger. The defendant with his automobile and trailer passed them ½ mile south of Wigwam Point. They kept in sight of defendant's car and saw the children on the east edge of the highway when approximately 300 feet south of that point. They had no difficulty in stopping and parking on their right side of the road following the accident. Russell, a Minneapolis police officer, who had been on traffic instruction, was called as a witness on behalf of the plaintiff. He stated that his brother James was also in court but that he had a speech defect; that he stutters and gets worse when excited about something. James was not called as a witness by the plaintiff but was later called as a witness by the defendant. Russell testified that he first saw the children from a distance of 100 yards playing near the water in the vicinity of some docks and anchored rowboats; that he next saw the group near the east edge of the highway and moments later saw Terresa crossing the highway before the accident. Russell testified that defendant made a violent stop, such as he would call "dynamiting" the brakes. He further testified that the man who picked up the child came from a cabin on the west side of the highway. They testified to seeing a group of four people on the east edge of the highway in the first instance; that one of the group then crossed to the west side; that Terresa then started across alone which left two standing on the east edge just before the accident. Neither one testified to seeing an approaching car passing in the west lane. James testified

to having had a clear view ahead and that there were no cars visible between the Blosberg car and Terresa on the highway. He further testified that he had a clear vision for some distance straight ahead on the highway beyond the point where Terresa was struck by defendant's car. A careful search of the record fails to disclose any reference in the testimony of either Russell or James Green to a car or cars approaching from the opposite direction blocking the west lane at the time of the accident. It was for the jury to determine the accuracy of their observations and the credibility of the resulting testimony.

It was the contention of the plaintiff that the defendant was traveling too fast and that he did not keep a proper lookout. The plaintiff in no way contended that defendant "did not choose the best or safest way." The sudden-emergency rule by its own language as it is applied in this state prescribes that the emergency must not have been brought about by him who would be excused by it. The testimony in this case strongly tends to establish that whatever may have existed in the way of a sudden emergency occurred either because of defendant's speed or his failure to keep a proper lookout, or both. We have said that the sudden-emergency rule is inapplicable unless it be first determined that there existed a real peril, to which the party seeking its protection did not contribute by his own want of care, and that the rule cannot be successfully invoked by a party who has brought the emergency upon himself or who has failed in the application of due care to avoid it. Therefore any act, or failure to act, amounting to a lack of due care defeats the right to claim the benefit of the emergency rule. Anderson v. Gray, 206 Minn. 367, 288 N. W. 704; Zickrick v. Strathern, 211 Minn. 329, 1 N. W. (2d) 134; Nicholas v. Minnesota Milk Co. 212 Minn. 333, 4 N. W. (2d) 84; Lee v. Zaske, 213 Minn. 244, 6 N. W. (2d) 793; Anderson v. Davis, 151 Minn. 454, 187 N. W. 224; Callahan v. Prewitt, 143 Neb. 787, 793, 13 N. W. (2d) 660.

It seems obvious to us that the defendant brought on the emergency by driving at the speed he did after he had observed the children on the edge of the highway and by failing to keep a proper lookout and make a timely application of his brakes in order to sooner bring his car under control. As the evidence stands defendant did

choose the best and safest way in his attempt to avoid colliding with Terresa upon the highway and would undoubtedly have succeeded except for the speed he was traveling when he first made an application of his brakes. He took his foot off the accelerator when he saw the children on the edge of the highway 300 feet up ahead. In doing so he must have anticipated some movement by the children. He did not apply his brakes to slow up his speed of 45 to 47 miles per hour until some 60 feet from Terresa. Had he been going more slowly he would have avoided the accident. He operated a skidding car for a distance of 62 feet because of his speed. Bakken v. Lewis, 223 Minn. 329, 26 N. W. (2d) 478; Hutzler v. McDonnell, 239 Wis. 568, 2 N. W. (2d) 207; 13 Dunnell, Dig. (3 ed.) § 6972a.

Upon the evidence we see no basis for an application of the sudden-emergency doctrine. We think it obvious that, if defendant had kept a proper lookout and made timely application of his brakes in reduction of his speed, he would not have found himself overtaken by the emergency of which he now complains. We think the evidence clearly presented jury issues as to defendant's negligence with respect to lookout, speed, and with respect to management and control of his car; likewise, as to the alleged contributory negligence of plaintiff. We fail to see where the trial court in any sense committed prejudicial error in holding the emergency rule inapplicable to the facts in this case.

Order and judgment affirmed.